666 A.2d 912

**Melvin MATTHEWS**

v.

**STATE of Maryland.**

**No. 24, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Nov. 3, 1995.

728

Michael R. Malloy, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Andrew L. Sonner, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Submitted before MOYLAN, ALPERT * and CATHELL, JJ.

CATHELL, Judge.

Appellant, Melvin Matthews, was convicted in a jury trial in the Circuit Court for Montgomery County (Beard, J., presiding) of second degree rape and child abuse. He was sentenced to twenty years imprisonment for the rape conviction and to a concurrent fifteen-year term for the child abuse conviction.

On appeal, appellant presents the following questions:

1. Was Appellant's self-incriminating statement involuntary and taken in violation of his *Miranda* [1] rights?

2. Did the lower Court err by allowing Appellant's four year old daughter to testify?

3. Did the lower Court err by admitting hearsay evidence about what the alleged victim told her mother who in turn told it to an examining physician?

4. Was the evidence insufficient?

We shall begin our discussion by briefly recounting the evidence presented at trial.

---

* Alpert, J., participated in the argument and decision in this case, retired from the Court prior to the filing of the Opinion, and was recalled pursuant to Md. Constitution art. IV, § 3A.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Prior to the interrogation of appellant, it is undisputed that the *Miranda* warnings were initially given to him, that he understood those rights, and that he signed a waiver form and initially agreed to answer questions. The issue here involves subsequent happenings.

According to the evidence solicited by the State, appellant had sexual relations with his four-year-old daughter. The child, who was ruled to be a competent witness, testified that her father had put his "private" into her "private."

Detective Rodney Hill testified that he began the investigation of the case, and that, when he questioned appellant, appellant denied committing any type of sexual act or abuse of the child. He also stated that he left appellant alone with Detective Scott Loomis, and that, when he returned, appellant admitted that he had had sex with the child.

Detective Loomis testified that appellant admitted that he had put his penis into the child.

Medical evidence given by Dr. Nasreen Ahmed indicated that penetration had taken place, which, the doctor concluded, could have been by a penis.

Appellant, testifying in his own defense, denied having any sexual relations with his daughter and denied abusing her. He also denied admitting any improper conduct to Detective Loomis or to Detective Hill.

## I.

Appellant first contends that the trial court "erred by denying [his] motion to suppress his self-incriminating statement which was involuntary and taken in violation of [his] *Miranda* rights." The State disagrees and suggests further that defense counsel had not properly preserved the issue for appeal.

At the suppression hearing, defense counsel expressly denied that she was arguing the Fifth Amendment; rather, she stated, she was simply challenging the voluntariness of the statements allegedly made by appellant. Consequently, it would seem that appellant's three-pronged attack [2] of the trial

---

**2.** In support of his contention, appellant argues that: (1) the police violated *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), by initiating an interrogation about the child abuse charge when he was

court's ruling on his motion to suppress properly survives only as to the third issue, its involuntariness, as the State contends. Be that as it may, even assuming that all of the issues raised were preserved, appellant still would not prevail in his challenge of the trial court's denial of his motion. We explain.

■ In reviewing the denial of a motion to suppress, we look only to the record of the suppression hearing and do not consider the record of trial. *Trusty v. State*, 308 Md. 658, 670–71, 521 A.2d 749 (1987) (quoting *Jackson v. State*, 52 Md.App. 327, 332 n. 5, 449 A.2d 438, *cert. denied*, 294 Md. 652 (1982)); *Watkins v. State*, 90 Md.App. 437, 439, 601 A.2d 1115, *cert. denied*, 327 Md. 80, 607 A.2d 921 (1992); *Pharr v. State*, 36 Md.App. 615, 618, 375 A.2d 1129, *cert. denied*, 281 Md. 742 (1977). We are further limited to considering only those facts that are most favorable to the State as the prevailing party on the motion. *Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239 (1990). *See also Simpler v. State*, 318 Md. 311, 312, 568 A.2d 22 (1990). In considering the evidence presented at the suppression hearing, we extend great deference to the fact-finding of the suppression hearing judge with respect to weighing and determining first-level facts. *Perkins v. State*, 83 Md.App. 341, 346, 574 A.2d 356 (1990). When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that his findings are clearly erroneous. *Riddick*, 319 Md. at 183, 571 A.2d 1239. Even so, as to the ultimate conclusionary fact of whether an action taken was proper, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *Id.; Perkins*, 83 Md.App. at 346, 574 A.2d 356. With this in mind, we turn to the case *sub judice.*

The trial court, in ruling on the motion to suppress, said:

already represented by counsel in another, unrelated matter; (2) the police violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), by refusing to comply with his request to consult with counsel during the interrogation; and (3) the statement was generally involuntary and coerced.

THE COURT: Thank you. Irrespective of all other considerations if an incriminating statement is made during a custodial interrogation and it is not voluntarily given then it is defective and inadmissible.

The Court has to determine whether or not the statement made by Mr. Matthews during this interrogation is the product of an overborne will.

For it to be admissible the Court has to be satisfied that it is voluntarily made, that it was intelligently made and that he in fact waived his right to have counsel.

The Court has to look at the totality of the circumstances under which the statement was obtained; whether or not there was any promise made to the defendant, whether or not he was threatened in any way, whether or not there was any deprivation or any coercive devices or methods used by the police.

It is clear that he was in custody. It is clear that it was an interrogation. The Court does not find in this record anything to suggest that he was threatened in any way, made any promises, intimidated or denied any reasonable comfort that he would be or should have been accorded under the circumstances.

Mr. Matthews's testimony when he testified in this proceeding today, he said quote he knew his rights and he understood his rights. There is nothing to suggest to this Court that he was threatened under the facts of this case.

There has been some reference to a dog but there is also an explanation by Officer Loomis that this dog had nothing to do with the interrogation. He is here for examining packages and anything else that might indicate that there is a bomb in the courthouse or the lock-up or any facility related to this building.

So the canine coercion does not exist. It is not a factor in this case.

The language used by Mr. Matthews of where is my lawyer?; I determine that to be an inquiry. That is not a request for an attorney. For the police to have something

on which to rely to consider it to be [a] reasonable demand for a lawyer it has to sound like a request or a demand for a lawyer.

Assuming without deciding to the contrary that Mr. Matthews did in fact say where is my lawyer? on one or more occasions—he indicated two or three—it does not translate a fair understanding of that expression, in these circumstances does not translate to a request or a demand for counsel.

So his preliminary statement or the first one given to Officer Loomis which obviously is an incriminating one was not improperly obtained from him by the police.

### a.

■ Appellant first argues that, contrary to *Edwards v. Arizona, supra,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), the police improperly initiated an interrogation about the child abuse charges when he was already represented by counsel in another matter. Appellant insists that, because he asserted his right to counsel in the other (unrelated) case, the police did not have any right to initiate custodial interrogation regarding the child abuse in this case in the absence of his counsel. Appellant inaccurately states the import of the *Edwards* decision.

In *Edwards,* the Supreme Court held that a custodial interrogation that took place the day after Edwards had requested his attorney (about the crimes for which questioning had previously been discontinued by his request for counsel) was violative of his constitutional right to have an attorney present during questioning. The dispositive difference, however, between the facts presented in that case and those presented in the case *sub judice* is the fact that, in *Edwards,* the interrogation related to the same charges for which the defendant had requested an attorney the day before. Moreover, Edwards remained in custody between the end of the

first interrogation and commencement of the second interrogation.

Appellant was not in custody at the time of his arrest on the child abuse charges. Rather, he was arrested in court while awaiting a hearing on a charge in a wholly unrelated matter, for which appellant was being represented by a public defender. That attorney testified that, when he asked to be allowed to speak with appellant, the deputy sheriff replied that "he couldn't let me do that at that time," and removed appellant from the courtroom. Because of his obligations to other clients, the public defender was unable to follow until a later time. Appellant testified that, when he looked at the attorney, "he just told me [to] cooperate." Appellant further stated that Detectives Hill and Loomis fully advised him of his rights and that he understood those rights, signed a waiver form, and agreed to answer the detectives' questions.

■■■ We perceive no constitutional violation under the facts as found by the trial court. While the Fifth Amendment guarantees the right to counsel during *custodial* interrogation, there must be an invocation of that right to trigger its protections. In determining what constitutes an invocation of the Fifth Amendment right to counsel, we look first to *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197, *reh'g denied,* 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979), where the Supreme Court held that a juvenile's request that his probation officer be present during questioning did not *per se* invoke his *Miranda* right to consult with an attorney and have an attorney present during that questioning. The Court noted that the admissibility of the statements on which the Miranda waiver was made was to be judged on "the totality of the circumstance surrounding the interrogation." *Id.* at 725, 99 S.Ct. at 2572. Furthermore, the defendant, in invoking his Fifth Amendment privilege, must make clear that he is requesting an attorney. *Davis v. United States,* —— U.S. ——, ——, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994).

■■■ We note further that, once a putative defendant properly invokes his right to counsel during a custodial interroga-

tion, the authorities may, nevertheless, reinstitute interrogation on a wholly different matter without being in derogation of the Constitution. In *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), Mosley was arrested for and questioned about a number of robberies. Although he declined to answer any questions, Mosley did not request an attorney. The authorities ceased their questioning of the defendant. Two hours later, after again being advised of his rights, Mosley was questioned about an unrelated murder. The Supreme Court upheld the admissibility of incriminating statements elicited during the second round of questioning based on the fact that it "focused exclusively on . . . a crime different in nature and in time and place" than the robberies about which he was previously interrogated. *Mosley,* 423 U.S. at 105, 96 S.Ct. at 327. No "repeated efforts to wear down [the suspect's] resistance and make him change his mind," *id.* at 105–06, 96 S.Ct. at 327, were engaged in and the second interrogation was limited to a crime not previously discussed.

With *Mosley,* we compare *Edwards v. Arizona, supra,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, relied on in large part by appellant. Although Edwards was advised of his rights prior to the second interrogation, he was questioned about the same crimes for which he had been arrested and questioned the day before. The Court announced that, in order to safeguard the constitutional rights of an in-custody defendant, a waiver of those rights could not be established solely by showing that he responded to additional, police-initiated custodial interrogation, even if he had been advised of his rights prior to the questioning.

The fact that appellant in the case *sub judice* was represented in an unrelated matter does not preserve his rights in this matter, and the fact that he invoked his right to counsel in that case is *not* tantamount to an invocation of his right to counsel during custodial interrogation on the charges stemming from his daughter's allegations. He was not in custody prior to initiation of the questioning concerning the child abuse charges and should not, as the trial court properly found, be considered to have had his will overborne. Appel-

lant, thus, was required to request an attorney in order to invoke the protection of the Fifth Amendment for the charges underlying the case *sub judice.* We look now to whether appellant's alleged request for an attorney was actually a request therefor.

### b.

■ Appellant complains that he did, in fact, request an attorney by asking two or three times, "Where's my lawyer?" The trial court ruled that this interrogative was not tantamount to a request for counsel. We agree.

■ A suspect must clearly request an attorney. *See Davis, supra,* —— U.S. at ——, 114 S.Ct. at 2356. Appellant insists that asking the whereabouts of his attorney constituted an unequivocal request therefor. Not so. Even his counsel asserted, "I conceded that Mr. Matthews asking where his lawyer was was not a clear and unequivocal statement as some of the other cases so nicely put it. I think that obviously is what the Court has to determine."

The defendant in *Davis* had been given his Miranda rights and interrogated for an hour and a half when he said, "Maybe I should talk to a lawyer." *Id.* at ——, 114 S.Ct. at 2353. The interrogator asked him if he was asking for a lawyer and he responded negatively. After another hour of interrogation, he unequivocally asked for a lawyer and the questioning ceased. When considering whether the initial statement, "Maybe I should talk to a lawyer," was, in fact, a request for a lawyer, the Supreme Court opined:

> The applicability of the "'rigid' prophylactic rule" of *Edwards* [3] requires courts to "determine whether the accused *actually invoked* his right to counsel." ... [T]his is an objective inquiry.... But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have

---

**3.** *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. . . .

Rather, the suspect must unambiguously request counsel. . . .

. . . [W]hen the officers . . . reasonably do not know whether . . . the suspect wants a lawyer, a rule requiring the immediate cessation of questioning "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity". . . .

. . . .

Of course, when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. . . . But we decline to adopt a rule requiring officers to ask clarifying questions. If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.

. . . [W]e are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue.

*Id.* at ——, 114 S.Ct. at 2355–57 (citations omitted).

Even if we were to concede that Matthews's question, "Where's my lawyer?," might have indicated that he wanted the assistance of counsel, as we read the language of *Davis,* that is not enough to require the immediate cessation of interrogation. While we can speculate that it *might* have been such a request *in appellant's mind,* the statement *to the officers* was not unambiguous and unequivocal. As the *Davis* Court held, "might," in terms of *Miranda,* is not enough.[4]

---

4. Whether appellant posed the question in the first instance is in dispute. The State's witnesses testified that appellant never made any inquiry about his attorney. The trial court "assumed without deciding" that the statement was made and then held that, even if the statement had been made, it did "not translate to a request" for an attorney. For

**c.**

■■■■■ Appellant also challenges the general voluntariness of his statement, asserting that Detectives Hill and Loomis overbore his will and coerced the statement from him. We do not agree.

> For a statement to be the free and voluntary act of an accused, it must be obtained without force applied, coercion used, hope held out or promise made on the part of the authorities. *Abbott v. State,* 231 Md. 462, 465, 190 A.2d 797 (1963). In other words, a confession or admission is not "voluntary" if it is the product of physical or psychological coercion. This test has been referred to as voluntariness in the traditional sense.

*State v. Kidd,* 281 Md. 32, 35–36, 375 A.2d 1105, *cert. denied,* 434 U.S. 1002, 98 S.Ct. 646, 54 L.Ed.2d 498 (1977).

> In the special circumstance of custodial interrogation ..., *Miranda* does not simply implement and fully protect th[is] traditional voluntariness standard; it goes beyond it by way of adding yet further safeguards[:] ... an advisement as to a right to silence or a warning that anything said may be used against the utterer, ... an advisement as to the right to the presence of an attorney, ... the provi[sion] of an attorney at state expense....
>
> ....
>
> Because *Miranda* is a more demanding standard than is traditional voluntariness, it is quite possible to fail the *Miranda* test and yet pass the undergirding voluntariness test....

*Hof v. State,* 97 Md.App. 242, 287–88, 629 A.2d 1251 (1993), *aff'd,* 337 Md. 581, 655 A.2d 370 (1995) In assessing voluntariness, an appellate court should look to the totality of the circumstances. *See Reynolds v. State,* 327 Md. 494, 506, 610 A.2d 782 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993). "The concern is whether an improper

---

the purposes of our holding, we have made the same assumption, *i.e.,* that the statement was made.

influence ... has been the pivotal criterion in producing a confession from one who would not have confessed but for that improper influence.... Unless the improper influence is the precipitating or catalytic agent for the confession, it is not fatal." *Hof,* 97 Md.App. at 289–90, 629 A.2d 1251.

Appellant sets forth three alleged indicia of coercion in arguing that his confession, if made, was not voluntary: (1) the deputy sheriff denied his counsel's request to speak to him; (2) he repeatedly asked where his lawyer was; and (3) a police dog was present when he was arrested. *None* of these arguments constitutes coercion. That the public defender could not talk to appellant at the time of his arrest does not constitute coercion, especially since appellant testified that the attorney told him to cooperate. The same holds true as to the "request" for his attorney, as we discussed, *supra.* As to the dog, Detective Loomis explained that it had nothing to do with the interrogation and was present to examine packages for possible explosives.

The court also found that no threats, inducements, or promises had been made to appellant and that he had not been denied any reasonable comfort. Appellant voluntarily waived his right and decided to do so after being advised of his rights. We perceive no error.

## II.

Appellant next contends, "The lower court erred by ruling that appellant's four year old daughter was a competent witness."

The determination of a child's competence to testify is generally left to the sound discretion of the trial judge, whose judgment will not be disturbed on appeal, absent an abuse of that discretion. *See Burgess v. State,* 89 Md.App. 522, 551, 598 A.2d 830 (1991), *cert. denied,* 325 Md. 619, 602 A.2d 710 (1992). Maryland Code (1973, 1995 Repl.Vol.), § 9–103 of the Courts and Judicial Proceedings Article, provides: "In a criminal trial, the age of a child may not be the reason for precluding a child from testifying." *See also Brandau v.*

*Webster,* 39 Md.App. 99, 104, 382 A.2d 1103 (1978). In determining a child's competency, the test is not the age of the child, but the child's reasonable ability to observe, to understand, to recall, and to relate happenings while conscious of a duty to speak the truth. *See Jones v. State,* 68 Md.App. 162, 166–67, 510 A.2d 1091 (1986). When the issue is raised, the trial judge should conduct an examination out of the presence of the jury to develop the factual basis for a competency determination. *Burgess, supra,* at 551, 598 A.2d 830.

Here, the trial court conducted a *voir dire* examination of the child outside of the presence of the jury. The child responded affirmatively to the court's questions regarding whether she knew the difference between telling the truth and telling a lie. She promised to tell the truth. The court also allowed both the prosecutor and defense counsel to *voir dire* the child. After the *voir dire,* and after the court heard arguments, the court determined that the child understood the difference between telling the truth and not telling the truth. We perceive neither abuse nor error.

### III.

Next, appellant contends, "The lower court erred by admitting hearsay evidence about what the alleged victim had told her mother who in turn had told it to an examining physician."

At the trial, the State, without objection from appellant, proffered at the beginning of the trial:

In this case I will be agreeing to the limiting instruction that they be viewed as examining physicians in this case and that the statements given to the doctor by the mother which is the circumstances of this case are used as a basis of opinion only and not used as substantive evidence. So I would submit to the defense's request for that instruction.

The instruction proffered by the defense was in fact given. Moreover, appellant's counsel in opening argument told the jury:

[Y]ou will find out that Dr. Ahmed's opinion is based primarily on misrepresentations made to her by Shonte's mother, Pamela Sowers. Shonte in fact said very little.

Both the police officers and the doctors base their opinions on what they were told by Pamela Sowers, Mr. Matthews'[s] disgruntled ex-girlfriend.

Though she raised a perfunctory objection when the evidence came in, she never requested that it be stricken and the instruction appellant wished to be given was apparently given. Thus, in the first instance a preservation question exists. Nevertheless, we shall further address the issue.

During the trial, Dr. Nasreen Ahmed, the examining physician, was allowed to testify as to what the child's mother had related to her. During the taking of the child's medical history, the mother told the doctor that the child had said that her father touched her and "put his privacy in [her] privacy." The court acknowledged that this testimony was hearsay, but instructed the jury that the evidence should not be considered for the truth of the matter asserted.

As we have indicated, at defense counsel's request, the court then instructed the jury as follows:

THE COURT: Yes. Ladies and gentlemen of the jury, ordinarily one witness cannot testify about something another person told him unless it was the defendant in a criminal case.

However, there are certain exceptions. I will now explain the exception. You are to consider what Dr. Ahmed says was told to her as not necessarily true but something that was just related to her. For example, the mother told this to the doctor. It does not mean that it is true. It may or may not be true but it is not to be taken necessarily as true.

It is just that in taking the history the doctor relied on representations from the mother as to what was told to her by the alleged victim in this case.

Moreover, our inspection of the record indicates that in its preliminary instructions to the jury, the court had told them:

The third alternative is I will direct you, give you an indication and tell you that the answer may be considered but it may be considered by you only for a limited purpose.

An example of this would be if the question is asked how old is such and such a person and the answer is 25 and there is an objection. I overrule the objection and I will tell you, ladies and gentlemen, it doesn't mean that the person is 25.

 Hearsay evidence may be admitted, not as proof of the underlying facts, but as the basis of an expert's opinion testimony. *See Booth v. State,* 327 Md. 142, 190, 608 A.2d 162, *cert. denied,* —— U.S. ——, 113 S.Ct. 500, 121 L.Ed.2d 437 (1992). We presume that juries follow the instructions of trial judges. *See Dennison v. State,* 87 Md.App. 749, 760, 591 A.2d 568, *cert. denied,* 324 Md. 324, 597 A.2d 421 (1991). Under the circumstances, we perceive no reversible error.

## IV.

 Lastly, appellant contends, "The evidence was insufficient to support [his] conviction." He argues that the testimony of the child and her mother was insufficient to show that he had engaged in sexual relations with the little girl, that the doctors were unable to say what had caused the penetration of the child's hymen, and that his confession was uncorroborated.

 The standard for our review of the sufficiency of the evidence is "whether after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). *See also Warsame v. State,* 338 Md. 513, 659 A.2d 1271 (1995). Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *See Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991). In performing this factfinding role, the fact finder has the discretion to decide which evidence to credit and which to reject. In this regard, it may believe part of a particular witness's testimony

but disbelieve other parts of that same witness's testimony. *Muir v. State*, 64 Md.App. 648, 654, 498 A.2d 666 (1985), *aff'd*, 308 Md. 208, 517 A.2d 1105 (1986).

In the case *sub judice*, even though the child did not want to testify against her father because it made her "sad," she herself said that he "put his private into my private." The pediatrician, Dr. Nasreen Ahmed, testified that she had examined the child a number of days after the incident and noted that her hymenal area was red, that there was a thick yellowish discharge, indicating the presence of an infection, and that the hymen itself was gaping and much larger than was normal for a child her age. The hymenal opening's size was consistent with penile penetration. Dr. Ahmed's testimony was corroborated by that of another physician.

The detective testified as to appellant's confession, saying that appellant told him that he, appellant, had gone into the child's room and "put [his] penis in her."

Under the circumstances here, we think that there was ample evidence from which appellant could be convicted.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**