675 A.2d 581

**Francis B. GANTT**

v.

**STATE of Maryland.**

No. 868, Sept. Term, 1995.

Court of Special Appeals of Maryland.

May 2, 1996.

**592**

·George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Michelle N. Levister, Staff Attorney, Baltimore, and Frank R. Weathersbee, State's Attorney for Anne Arundel County, Annapolis, on brief), for appellee.

Submitted before BISHOP and WENNER and EYLER, JJ.

BISHOP, Judge.

Following a trial conducted by way of a not guilty plea and an agreed statement of facts in the Circuit Court for Anne Arundel County, Francis B. Gantt, Jr., appellant, was convicted of child abuse. Immediately prior to appellant's trial, Judge Lerner heard and denied appellant's motion to suppress an oral statement he had made before he received warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After his conviction, appellant was sentenced to five years imprisonment, and ordered to pay court costs, a public defender fee of $150, and jury costs of $600. Two questions are presented:

I. Did the court err in denying appellant's motion to suppress the oral statement he made prior to receiving *Miranda* warnings?

II. Did the court err in ordering appellant to pay jury costs?

The court did not err in denying appellant's motion to suppress his statement, and we affirm appellant's conviction for child abuse; however, the court did err in ordering appellant to pay jury costs, and we vacate that part of appellant's sentence.

## STATEMENT OF FACTS

Immediately prior to trial, the court heard appellant's motion to suppress his statement. Officer Steven Burrell of the Anne Arundel County Police Department, the only witness to testify at the suppression hearing, testified that he received a call regarding an unspecified disturbance at appellant's home. He responded to the call and was approached by several individuals, all attempting to talk to him at once. Appellant was sitting in a chair in his living room. Because he was the quietest individual in the room, Officer Burrell approached him and asked, "What's going on here?" Appellant answered,

"She wouldn't listen to me so I was choking her." Officer Burrell testified that, at the time he approached appellant, he did not know why he had been called, and that he approached appellant only to ascertain what had occurred. Officer Burrell did not suspect that appellant had committed a crime. Appellant's freedom to move was in no way restricted.

Appellant presented no witnesses, but attempted to impeach Officer Burrell's testimony by referring to the Statement of Probable Cause that Officer Burrell had completed at the time of the incident. According to the Statement of Probable Cause, as Officer Burrell entered the house, one of the individuals present "pointed to a male seated in a chair and said, 'That's the man who did it.'" The court found that Officer Burrell's question to appellant was asked to determine what had happened. The court concluded that, at the time appellant made his statement, he was not subjected to a custodial interrogation, and, therefore, it was not necessary for Officer Burrell to give appellant *Miranda* warnings. Based on those findings, he denied appellant's motion to suppress.

Although the case ultimately proceeded as a court trial conducted by way of a not guilty plea and agreed statement of facts, appellant had previously told the jury commissioner that he wanted a jury trial. The court imposed jury costs of $600 on appellant. Appellant contends that the imposition of a $600 payment for jury costs constituted an illegal sentence.

### I.

Appellant contends that his statement in response to Officer Burrell's question, "What's going on here?" was the result of custodial interrogation and should have been suppressed because it was not preceded by a *Miranda* warning. We find no merit in this contention.

In reviewing the denial of a motion to suppress, we consider only the record of the suppression hearing. *Trusty v. State,* 308 Md. 658, 521 A.2d 749 (1987); *Aiken v. State,* 101 Md.App. 557, 647 A.2d 1229 (1994), *cert. denied* 337 Md. 89, 651 A.2d 854 (1995). We review the evidence in the light most

favorable to the prevailing party. *McMillian v. State,* 325 Md. 272, 600 A.2d 430 (1992); *Riddick v. State,* 319 Md. 180, 571 A.2d 1239 (1990). While we accept the findings of disputed fact, unless clearly erroneous, after having given due regard to the trial court's opportunity to assess the credibility of witnesses, we make our own constitutional appraisal as to the effect of those facts. *McMillian v. State, supra, Riddick v. State, supra.*

 The obligation to give *Miranda* warnings attaches "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury v. California,* 511 U.S. 318, ——, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994), quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). Whether an individual is in custody "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California, supra,* at ——, 114 S.Ct. at 1529. It "was the compulsive aspect of custodial interrogation ... which led the Court to impose the *Miranda* requirements with regard to custodial questioning," *Stansbury v. California, supra,* at ——, 114 S.Ct. at 1529, quoting from *Beckwith v. United States,* 425 U.S. 341, 345, 96 S.Ct. 1612, 1615, 48 L.Ed.2d 1 (1976). According to the Supreme Court, factors relevant to whether a questioning constitutes custodial interrogation include location of the interrogation, whether a suspect is sequestered or held incommunicado, the number of police officers present, and the duration of the interrogation. *See, e.g., Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Beckwith v. United States, supra. See also, Cummings v. State,* 27 Md. App. 361, 341 A.2d 294, *cert. denied* 276 Md. 740 (1975) in which we held that the defendant, who was interviewed for a brief period, in his hospital bed, with family present, and who was asked only non-accusatory questions was not subjected to the coercive, police-dominated environment that *Miranda*

sought to eliminate. We held, therefore, that the defendant had not been in custody within the meaning of *Miranda* at the time of the interview. *See also, Reynolds v. State,* 88 Md.App. 197, 594 A.2d 609 (1991), *affirmed* 327 Md. 494, 610 A.2d 782 (1992) *cert. denied* 506 U.S. 1054, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993).

Appellant was not in custody at the time he made the statement. Appellant was in his own home; Officer Burrell was the only police officer present; appellant was not sequestered or held incommunicado. Officer Burrell had asked only the non-accusatory question, "What's going on here?," before appellant made his statement. Officer Burrell testified that, when he spoke to appellant, he was merely trying to find out why he had been called.

When he first approached appellant, Officer Burrell had no reason to arrest appellant. Even if we believe that appellant had been pointed out as "the man who did it", this accusation would fall short of giving Officer Burrell reason to arrest appellant. Officer Burrell did not restrict appellant's freedom of movement in any way. There was no reason for appellant to believe that he had been deprived of his freedom in any significant way. Appellant was not in custody and, therefore, Officer Burrell was not required to give him *Miranda* warnings. *See, Stansbury v. California, supra; Cummings v. State, supra; Reynolds v. State, supra.* The court properly denied appellant's motion to suppress.

## II.

During sentencing, the court ordered appellant to pay $600 in jury costs, stating:

So that the record is clear when this matter is appealed, I want to make it clear to the Court of Special Appeals, that the reasons I am imposing the jury costs are as follows:

On Monday, April 10, 1995, jurors were called in especially for this case. Several days earlier the jury commissioner had been informed by the counsel, Mr. Warren and Mr. Whissel, that this was going to be a definite jury trial. Mr. Warren had stated that it would be a challenge jury and not

a strike jury as indicated on the criminal docket. The jurors were brought in and the case came before me. It turned to a not guilty statement of facts. Under the circumstances the court believes that [appellant] should pay those jury costs.

Appellant contends that he is being required to pay the jury costs because he waived a jury trial. He contends that this assessment constitutes an illegal sentence.

A trial judge's ability to impose costs on a defendant in a criminal case is governed by Rule 4-353, which provides:

A judgment of conviction or a disposition by probation before judgment or an accepted plea of nolo contendere shall include an assessment of court costs against the defendant unless otherwise ordered by the court.

The State argues that jury costs are included within the meaning of the term "court costs" under Rule 4-353. We disagree.

■ The Maryland Rules, passed "within their authorized scope, are legislative in nature." *Ginnavan v. Silverstone,* 246 Md. 500, 504-05, 229 A.2d 124 (1967). Accordingly, "the canons and rules of construction that guide the interpretation of statutes apply equally when interpreting rules of procedure." *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193 (1994).

■ In interpreting a statute, the goal is to "ascertain and effectuate the legislative intent." *Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870 (1994). In so doing, we look primarily at the language of the statute itself, which is construed according to its ordinary and natural import. *Id. See also Rose v. Fox Pool,* 335 Md. 351, 359, 643 A.2d 906 (1994). The plain language of the statute cannot be viewed in isolation, however; "rather, the entire statutory scheme must be analyzed as a whole." *Outmezguine,* 335 Md. at 41, 641 A.2d 870.

■ The ordinary import of the term "court costs" supports the conclusion that jury costs are not "court costs"

under Rule 4–353. Jury costs are generally not understood to be "court costs," and are usually not included within the costs imposed by courts in civil and criminal cases.

Further, there are three additional laws governing court and jury costs that lead us to conclude that jury costs are not "court costs" under Rule 4–353. The first is the schedule of circuit court costs, which was established pursuant to § 7–202 of the Courts and Judicial Proceedings Article and adopted by the legislature. Although quite lengthy, it contains no provision for an assessment of jury costs.

The second is Rule 2–509, which provides:

(a) **Application.**—This Rule applies only in the First, Second, and Fourth Judicial Circuits.

(b) **Special Costs Imposed.**—When a jury trial is removed from the assignment at the initiative of a party for any reason within the 48 hour period, not including Saturdays, Sundays, and legal holidays, prior to 10:00 a.m. on the date scheduled, an amount equal to the total compensation paid to jurors who reported and were not otherwise utilized may be assessed as costs in the action against a party or parties in the discretion of the court and remitted by the clerk to the county. The County Administrative Judge, with the approval of the Circuit Administrative Judge, may waive assessment of these costs for good cause shown.

This rule, applying in civil cases only, was added in addition to Rule 2–603, which governs the imposition of "costs" in civil cases. It indicates that jury costs are considered by the Court of Appeals to be unusual, and not part of the costs generally imposed by courts.

The third is § 8–106(c) of the Courts and Judicial Proceedings Article (1995 Repl.), which provides as follows:

*Levy for payments.*—The government of each county shall levy each year a sum sufficient to pay jurors the amounts due them.

No similar provision exists mandating that counties raise money to pay other court costs.

All three provisions clearly indicate that jury costs were not intended to be "court costs" within the meaning of Rule 4–353. If they were, jury costs would have been included in the circuit court schedule of fees, and Rule 2–509 and § 8–106 would be unnecessary. Accordingly, we hold that jury costs are not "court costs" under Rule 4–353.

**PORTION OF SENTENCE ASSESSING JURY FEE VACATED; JUDGMENT AFFIRMED IN ALL OTHER RESPECTS.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY ANNE ARUNDEL COUNTY.**