709 A.2d 168

**Christopher Leon HARDY**

v.

**STATE of Maryland.**

**No. 1503, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

May 5, 1998.

Douglas J. Wood (Roberts & Wood, on the brief), Riverdale, for appellant.

Emmet Davitt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, HOLLANDER and EYLER, JJ.

HOLLANDER, Judge.

On October 6, 1997, Christopher Leon Hardy, appellant, entered a plea of not guilty to various drug charges, pursuant to an agreed statement of facts. Thereafter, the Circuit Court for Prince George's County found him guilty of possession with the intent to distribute a controlled dangerous substance, in violation of Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 286(f)(1)(iii). After appellant was sentenced to a mandatory term of five years of incarceration, he noted this appeal. He presents one question for our review, which we have rephrased:

Did the motion court err in denying appellant's motion to suppress physical evidence based on an unlawful vehicle stop that was made in response to an anonymous tip?

As we answer this question in the affirmative, we shall reverse the conviction.

## FACTUAL SUMMARY

On March 27, 1997, appellant was arrested when police officers recovered 227 grams of crack cocaine from his person during a felony traffic stop. Hardy was subsequently charged with possession with the intent to distribute a controlled dangerous substance, in violation of Code, Article 27, §§ 286(a)(1) and 286(f)(1)(iii), and with simple possession, in violation of Art. 27, § 287(a).

The court held an evidentiary hearing with respect to appellant's motion to suppress. At the hearing, Officer Brandon Sprague of the Prince George's County Police Department testified on behalf of the State. According to Sprague, at approximately 12:33 p.m. on March 27, 1997, the police received information from an anonymous caller that "a burgundy Honda was traveling eastbound on East–West Highway and the occupants were believed to have weapons and drugs in the car." This information was then broadcast to police officers in the area. Upon receiving the information, Officer Sprague proceeded to the area around East–West Highway and Belcrest Road, where he observed a burgundy Honda

Accord with Virginia temporary license plates, matching the description of the vehicle "put out over the radio." [1] A patrol car from the Riverdale Police Department was following the suspect automobile.

Officer Sprague further testified that the police stopped the vehicle in a public parking lot near Belcrest and Toledo Road in Hyattsville, Maryland. A K–9 Unit also responded to the scene. The occupants were ordered by police to exit the vehicle. Using a bull-horn and with their guns drawn, the police instructed the occupants to walk backwards toward the police cruisers. The police then handcuffed the occupants and patted them for weapons. [2]

Officer Sprague testified concerning the pat-down of appellant by Corporal Randall S. Matthews. He stated:

[Corporal Matthews] patted him down in the groin area, and he could feel something in his pants. I can't describe what he could feel, and you could also hear like a plastic bag sounds in his groin, and Corporal Matthews investigated further, and opened his pants, and pulled a large bag of crack cocaine, suspected crack cocaine, from his groin area.

Thereafter, the court engaged in the following colloquy with Officer Sprague:

THE COURT: You get an anonymous call, and tell me what the call said.

[OFFICER SPRAGUE]: It went out that the burgundy Honda left the Bladensburg area, traveling towards East–West Highway, going to Bellcrest [sic], or Toledo Terrace, and Riverdale [police] intercepted them approximately a little over half-way there, and Riverdale [police] followed them.

THE COURT: I want to know what information you received that necessitated you to stop the vehicle.

---

1. The vehicle was later determined to be a 1983 Honda Accord, with Virginia temporary plate number 2875386.

2. The legitimacy of the frisk is not before us.

[OFFICER SPRAGUE]: That there was a burgundy Honda, and the occupants were to have guns and drugs in the car.

Corporal Randall S. Matthews, assigned to the K–9 Unit of the Prince George's County Police Department, Special Operations Division, also testified for the State. He said that a radio dispatch had been broadcast concerning three "subjects alleged to be armed and in possession of a quantity of narcotics." Although Corporal Matthews thought that the broadcast included "a description of the vehicle," he did not testify as to the description. Corporal Matthews also explained that the suspects were in a vehicle that was "supposed to be coming from the area of Capital Plaza towards Toledo Plaza, so [he] tried to get in the middle, basically, between those two spots, and see if [he] could spot the car."

As he was approaching Toledo Terrace, Corporal Matthews recounted that he learned from a police broadcast that the vehicle had been spotted by Riverdale police and was pulling into a parking lot off Toledo Terrace. At that point, Corporal Matthews "got on the radio and requested that [the police] not approach the car until [he] got there and [he] could take [his] K–9 partner out."

Upon his arrival at the scene, Corporal Matthews observed three people exiting the suspect vehicle. He frisked the three occupants, in order to determine whether they were carrying any weapons. During the patdown of the first occupant, Corporal Matthews was told that appellant had drugs on his possession. In frisking appellant, Corporal Matthews felt a hard object in appellant's groin area, which he thought was narcotics. The following testimony is pertinent:

[THE STATE]: And once you patted down the defendant, what happened?

[CORPORAL MATTHEWS]: As I was patting him down I reached up into the crotch area and felt a hard object in his crotch area.

[THE STATE]: Based on your training and experience, what did you believe that hard object to be?

[CORPORAL MATTHEWS]: It was my experience, based on what I had been told, and by the shape and weight, it was probably narcotics.

[THE STATE]: And once you felt that object, what did you do next?

[CORPORAL MATTHEWS]: I asked the subject what was in his pants. He didn't say anything. I then retrieved the item from the front of his pants.

[THE STATE]: And what did you believe the item that you retrieved from his pants to be?

[CORPORAL MATTHEWS]: Crack cocaine.

After handing the suspected narcotics to another police officer, Corporal Matthews took his police dog and conducted a search of the Honda. This search did not yield any additional narcotics or any weapons. Thereafter, the court questioned Corporal Matthews. The following exchange is relevant:

THE COURT: You saw the bulk in his pants?

[CORPORAL MATTHEWS]: Saw the bulge.

THE COURT: You felt the bulge?

[CORPORAL MATTHEWS]: Yes, sir.

THE COURT: And you asked him what it was?

[CORPORAL MATTHEWS]: Yes, sir.

THE COURT: And as a result of his not responding, you searched him?

[CORPORAL MATTHEWS]: Yes, sir.

THE COURT: And you thought it was a weapon or cocaine?

[CORPORAL MATTHEWS]: I thought from what I had been told that it was cocaine.

THE COURT: Who told you it was?

[CORPORAL MATTHEWS]: The first person that came out of the car that I patted down. He told me he had the cocaine in his underwear.

Appellant did not present any evidence at the hearing. At the close of the evidence, the State argued that the police had

a right to stop the car and detain its occupants to determine the accuracy of the anonymous tip. The defense argued that appellant was under arrest when he was subjected to a felony stop and that the arrest was not supported by probable cause. Appellant also asserted that the tip contained insufficient detail to justify the stop. Indeed, Hardy contended that the information from the anonymous source was inadequate to justify even a *Terry*[3] stop of the vehicle and its occupants.

The trial court acknowledged that it was "concerned of what right [the police] had to stop that car." Because the court thought the matter constituted a "close case," it took appellant's motion to suppress "under advisement."

Subsequently, by order dated October 3, 1997, the court denied appellant's motion to suppress. The order provided, in part:

> In the case at hand the police officers had a tip describing the vehicle, the direction it was going and the number of occupants (3). Relying on their personal experiences, the officers were aware that weapons are usually associated with drug activity, the officers explained that they drew their guns and ordered the occupants out of the vehicle and conducted a "frisk" of the defendant. The length of detention was relatively brief, there was no arrest at that time but a forcible detention. Police then observed a "bulge" in defendant's trousers which was properly seized pursuant to an appropriate "pat down."
>
> Here, the combination of the description of the vehicle leaving the Bladensburg area, travelling towards East–West Highway, going to Belcrest or Toledo Terrace was sufficient under the totality of the circumstances to justify the investigatory stop.
>
> Therefore, balancing the facts the officers relied upon to make the stop against the defendant's right to be free from any arbitrary intrusions by the State, this Court finds that

---

**3.** *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

the officer's suspicion was reasonable and the stop was justified, albeit a ["]close case."

(Citations omitted).

## DISCUSSION

Appellant asserts that the trial court erred in denying his motion to suppress. He claims that the tip from the anonymous informant was too vague and uncertain to establish a particularized and objective basis for suspecting that appellant was armed and dangerous or engaged in criminal activity. In particular, he suggests that the anonymous tip indicated only that the vehicle was proceeding "from one general area to another very public area," and was not sufficient to constitute a statement of predictive behavior. Appellant also posits that the anonymous tip did not contain any information regarding the license plate, model, or year of the vehicle. Further, he asserts that the tip did not include information about the age, race, or gender of the vehicle's occupants, nor was any information provided describing the occupants' clothing.

The State counters that "[t]he record from the suppression hearing established that, under the totality of the circumstances, the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of Hardy's car." According to the State, the tip was adequate because it "contained a range of details" and information that "demonstrated an ability to predict Hardy's future behavior in that it provided his destination as well as his origin." The State also notes that the Honda was "intercepted" about "halfway there," and the police stopped the vehicle only after they "verified the prediction" as to its route. Therefore, the State asserts that this vehicle was lawfully stopped, and the court correctly denied the suppression motion.

 Preliminarily, we observe that our review of a denial of a motion to suppress is ordinarily confined to the record of the suppression hearing itself. *Lee v. State,* 311 Md. 642, 648, 537 A.2d 235 (1988); *Trusty v. State,* 308 Md. 658, 670–72, 521 A.2d 749 (1987); *Flores v. State,* 120 Md.App. 171, 178, 706

A.2d 628, 631 (1998); *Wynn v. State,* 117 Md.App. 133, 165, 699 A.2d 512, *cert. granted,* 348 Md. 207, 703 A.2d 149 (1997); *Gantt v. State,* 109 Md.App. 590, 594, 675 A.2d 581 (1996); *Matthews v. State,* 106 Md.App. 725, 732, 666 A.2d 912 (1995), *cert. denied,* 341 Md. 648, 672 A.2d 623 (1996); *Aiken v. State,* 101 Md.App. 557, 563, 647 A.2d 1229 (1994), *cert. denied,* 337 Md. 89, 651 A.2d 854 (1995). When reviewing evidence presented at a suppression hearing, we extend great deference to the fact-finding of the trial court. *Perkins v. State,* 83 Md. App. 341, 346, 574 A.2d 356 (1990). Moreover, we must consider only those facts that are "most favorable to the State as the prevailing party on the motion." *Matthews,* 106 Md. App. at 732, 666 A.2d 912. Nevertheless, in order to determine if a constitutional right has been violated, we must make our own independent appraisal of the record concerning the law and its application to the facts of the case. *Carroll v. State,* 335 Md. 723, 736, 646 A.2d 376 (1994); *McMillian v. State,* 325 Md. 272, 285, 600 A.2d 430 (1992); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Gantt,* 109 Md.App. at 595, 675 A.2d 581.

 The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). *See also Maryland Const., Declaration of Rights, Art.* 26. The linchpin of the Fourth Amendment is reasonableness. *McMillian,* 325 Md. at 281, 600 A.2d 430 (citing *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991)). "Reasonableness is determined by balancing 'the intrusion on the individual's Fourth Amendment interests against [the] promotion of legitimate governmental interests.'" *Id.* (Quoting *Maryland v. Buie,* 494 U.S. 325, 331, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276 (1990)). An automobile stop is "subject to the constitutional imperative" of reasonableness. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996).

■ Warrantless searches, seizures, and arrests are *per se* unreasonable, subject only to a few well established exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). What has become known as the *"Terry* stop and frisk" is one of the limited exceptions to the warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Terry,* 392 U.S. 1, 88 S.Ct. 1868, and the companion case of *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court ruled that police officers may stop persons when they have "specific and articulable facts which, taken together with rational inferences from those facts," create reasonable suspicion that the person has been or is about to engage in criminal activity. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879; *see Aiken,* 101 Md.App. at 567, 647 A.2d 1229. In *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court explained:

> A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Id.* at 146, 92 S.Ct. at 1923 (citing *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–80). The Supreme Court further said in *Terry:*

> [W]here a police officer observes unusual conduct *which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous,* where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry,* 392 U.S. at 30, 88 S.Ct. at 1884–85 (emphasis added).

■ The purpose of a *Terry* stop, then, is investigative—to verify or to dispel the officer's suspicion surrounding

the suspect. *Terry,* 392 U.S. at 22–23, 30, 88 S.Ct. at 1880–81, 1884. When an officer has a "reasonable suspicion supported by articulable facts that criminal activity may be afoot," the officer may ordinarily detain an individual for a brief period of time. *Derricott v. State,* 327 Md. 582, 587, 611 A.2d 592 (1992); *see Munafo v. State,* 105 Md.App. 662, 670, 660 A.2d 1068 (1995); *see also Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996) (describing reasonable suspicion as " 'a particularized and objective basis' for suspecting the person stopped of criminal activity' "). But the stop must be " 'justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.' " *Aiken,* 101 Md.App. at 567, 647 A.2d 1229 (quoting *U.S. v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The brief detention and limited intrusion permitted under the *Terry* exception are not deemed unreasonable when weighed against the governmental interests served. These include effective crime prevention and detection and the safety of the police officer and others nearby. *Terry,* 392 U.S. at 16–27, 88 S.Ct. at 1877–83; *State v. Wilson,* 279 Md. 189, 199, 367 A.2d 1223 (1977); *Weedon v. State,* 82 Md.App. 692, 696, 573 A.2d 92 (1990).

The difficulty often arises in pinpointing exactly what is meant by the term "articulable suspicion." This difficulty was recognized by the Supreme Court in *Ornelas,* when the Court observed:

> Articulating precisely what "reasonable suspicion" and "probable cause" mean is not possible. They are common-sense, nontechnical conceptions that deal with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." As such, the standards are "not readily, or even usefully, reduced to a neat set of legal rules."

*Ornelas,* 517 U.S. at 695–96, 116 S.Ct. at 1661 (citations omitted).

The case of *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), is also instructive. There, the Supreme Court said:

"The officer [making the *Terry* stop] ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch."' The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' and the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause."

\* \* \* \* \* \*

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Id.* at 329–30, 110 S.Ct. at 2416 (citations omitted) (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)); *see Graham v. State,* 325 Md. 398, 408, 601 A.2d 131 (1992); *Quince v. State,* 319 Md. 430, 433, 572 A.2d 1086 (1990).

 Under certain circumstances, an anonymous tip may be sufficient to justify an investigatory stop. *White,* 496 U.S. at 332, 110 S.Ct. at 2417. Indeed, this Court recognized in *Allen v. State,* 85 Md.App. 657, 584 A.2d 1279, *cert. denied,* 323 Md. 1, 590 A.2d 158 (1991),

that an anonymous informant's reliability can be confirmed in two ways, both of which demonstrate the informant's first-hand knowledge which bolsters the inference that he is reporting accurate information. First, the information provided may contain self-verifying details. Self-verifying details are demonstrated either by the richness of the information provided in the description, or by the accuracy with which the tip predicts the suspect's future behavior. Secondly, an anonymous informant's tip has sufficient indicia of

reliability if a police officer personally corroborates the tip with his own observations.

*Id.* at 666–67, 584 A.2d 1279 (citations omitted).

██ In this case, we must determine whether the anonymous tip justified the stop or whether it "was so 'completely lacking in indicia of reliability [that it] would either warrant no police response or require further investigation before a forceable stop of a suspect would be authorized.'" *Allen,* 85 Md.App. at 664, 584 A.2d 1279 (quoting *Adams,* 407 U.S. at 147, 92 S.Ct. at 1924). A challenge to police conduct is viewed in light of the totality of the circumstances. *Allen,* 85 Md. App. at 664, 584 A.2d 1279; *see also Malcolm v. State,* 314 Md. 221, 230–31, 550 A.2d 670 (1988) (stating that the totality of circumstances test applies to warrantless searches and concluding that police had probable cause to conduct warrantless search of automobile).

To be sure, information from an anonymous tip may provide reasonable suspicion to justify an investigatory stop. *White,* 496 U.S. at 332, 110 S.Ct. at 2417. In *White,* the Supreme Court considered whether, under the totality of the circumstances, an anonymous tip exhibited sufficient indicia of reliability to justify an investigatory stop of a vehicle. There, the Montgomery County Police Department received an anonymous tip that the defendant would leave the Lynwood Terrace Apartments at a certain time and proceed, in a brown Plymouth station wagon with a broken right taillight, to Dobey's Motel. The informant further told police that the defendant would be carrying approximately one ounce of cocaine in a brown attaché case. Thereafter, police officers observed a brown Plymouth station wagon at the Lynwood Terrace Apartments. When the suspect exited the apartment building and drove off in the station wagon, the police followed. They stopped the defendant's vehicle approximately a quarter of a mile from Dobey's Motel. During a subsequent search, the police discovered marijuana in the attaché case and cocaine in the defendant's purse.

The Supreme Court concluded that the police officers lawfully stopped the vehicle. It explained:

Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors-quantity and quality-are considered in the "totality of the circumstances-the whole picture," *United States v. Cortez*, 449 U.S. 411, 417 [101 S.Ct. 690, 695, 66 L.Ed.2d 621] (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*White*, 496 U.S. at 330, 110 S.Ct. at 2416. The *White* Court reasoned that "the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller." *Id.* at 332, 110 S.Ct. at 2417. Thus, when the police verified significant aspects of the caller's predictions, "there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop." *Id.*

Nevertheless, the Court in *White* noted that some of the information about the suspect pertained to matters that "[a]nyone could have 'predicted'...." *White*, 496 U.S. at 332, 110 S.Ct. at 2417. Consequently, the Court focused on the anonymous informant's descriptions of the suspect's future conduct, which was not something that everyone would know. Of particular significance here, the Court said:

What was important was the caller's ability to predict respondent's *future behavior*, because it demonstrated inside information-a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such

information is likely to also have access to reliable information about that individual's illegal activities.

*Id.* (Emphasis in original).

*Millwood v. State,* 72 Md.App. 82, 527 A.2d 803, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987), *cert. denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988), is also illuminating. As in this case, the appellant there asserted that the trial court erred in denying his motion to suppress the narcotics that were recovered by police officers after they stopped the appellant's vehicle based upon an anonymous informant's tip. An informant had advised the Maryland State Police that a purple 1965 Ford Thunderbird with Pennsylvania license plates would be traveling south on Interstate 81 on a drug run from Pennsylvania to Maryland, and that the car would enter Maryland "in an hour or two." Additionally, the informant told police that the vehicle contained a shipment of methamphetamines, which were located either in the trunk or taped inside the grill of the vehicle, and that the vehicle was occupied by two people: a white male who was wearing an "Indiana Jones" style hat and a white female.

This Court affirmed the denial of the motion to suppress, concluding that the confirmation by police of the informant's prediction that the vehicle would enter Maryland within a specified time frame, along with the confirmation of "substantially all of the other information provided by the informant, provided an articulable basis to suspect that the informant's tip was true and thus to stop the [vehicle] and question its occupants." *Millwood,* 72 Md.App. at 94, 527 A.2d 803. Central to our decision to uphold the stop and subsequent search of the vehicle in *Millwood* was the fact that the anonymous caller provided predictive information that was not obvious to the public, along with detailed information that was subsequently corroborated by the police. We reasoned:

What sets this anonymous caller apart from the public at large, and what provides a reasonable basis for suspecting that his allegation of criminal activity may be true, is that he correctly informed the police that the [vehicle] would contin-

ue along Interstate 81 and cross over into Maryland in one to two hours.

*Id.* at 93–94, 527 A.2d 803.

It is noteworthy here that the *Millwood* Court recognized that a "mere description of the [vehicle] and its occupants could have been provided by any mischief maker who merely happened to observe the distinctive automobile as it traveled southward along Interstate 81." *Millwood,* 72 Md.App. at 93, 527 A.2d 803. Thus, we expressed concern that had the extent of the information provided by the anonymous informant been only that

> methamphetamines were being transported in Pennsylvania along Interstate 81 by a white male wearing an "Indiana Jones" style hat and a white female, both occupying an automobile of a specific year, make, model and color with Pennsylvania tags . . . . *it might well be questionable whether confirmation of that information would have justified even an investigatory stop.*

*Id.* (Emphasis added). *Cf. Green v. State,* 77 Md.App. 477, 484–85, 551 A.2d 127 ("[T]he mere verification by the police of the description of the appellant's clothing and the location of where he was sitting failed to serve as sufficient corroboration to establish reliability or probable cause."), *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989).

We are also guided by *State v. Kennison,* 134 N.H. 243, 590 A.2d 1099 (1991). In the majority opinion issued by the Supreme Court of New Hampshire, the court determined that an anonymous tip that informed the police that Kennison had four pounds of marijuana in the trunk of her vehicle was not sufficient to justify an investigative stop.

In *Kennison,* the informant had described the type of vehicle, the license plate number, and the suspect's place of employment. Further, the police were told that Kennison would leave work at 3:00 p.m., return to her residence, and then leave to make marijuana deliveries. Undercover police officers were dispatched to the place of employment and observed a woman enter the car in question at the appointed

hour. The police also set up surveillance of Kennison's residence, and observed Kennison as she arrived at her home. About two hours later, the police saw Kennison leave her residence and, after following her for less than a mile, the police "pulled her over." When Kennison signed a consent to search form, the police recovered four pounds of marijuana from the trunk of her vehicle. Nevertheless, applying New Hampshire constitutional law, the court concluded that the trial court erred in denying the defendant's motion to suppress the marijuana.

In the majority's view, "the police merely corroborated mundane, innocent facts easily available to co-workers or friends, or to persons who might wish to harass or embarrass another." *Kennison,* 590 A.2d at 1101. With respect to the quality of information provided by the anonymous informant, the court reasoned that "the information contained in the tip relative to [Kennison's] car, license plate, place of employment, and the time that [Kennison's] workday ceased is of a kind readily available to many people." *Id.* Further, the court noted that the informant's statement that "Kennison would leave work and go home and then later go out were not of such character to show that [the informant] was specially privy to her itinerary or familiar with her affairs." *Id.* Finally, the court observed that the tip did not contain the kind of detail that rendered it "self-verifying." *Id.* Therefore, based on the totality of the circumstances, the court held that the police lacked reasonable suspicion to effect the stop.

We also consider persuasive what the Court of Appeals for the First Circuit said recently in *United States v. Khounsavanh,* 113 F.3d 279, 284 (1st Cir.1997)

[I]t is not particularly probative for the informant to supply a lot of details about irrelevant facts that other people could easily know about and that are not incriminating, such as describing all the furniture in an apartment or the defendant's routine activities. Such details do not demonstrate that the informant has a legitimate basis for knowing about the defendant's allegedly criminal activity....

As we see it, the cases make clear that, in order to support an investigatory vehicle stop based on an anonymous informant's tip, the tip must provide something more than facts or details that are readily visible to the public. Moreover, to the extent the tip predicts a suspect's future conduct, the quality of the informant's information must be sufficient to demonstrate a familiarity with the suspect's itinerary or affairs.

Here, the tip was, at best, quite scanty in regard to any details about the vehicle or the occupants. Indeed, the meager description of the vehicle and the occupants consisted of information readily apparent to any individual in that area on that particular day. Even the State concedes that "[a]nyone could have observed that a burgundy Honda Accord with three occupants was traveling on a particular road."

The State claims, however, that the tip was adequate because it predicted Hardy's future behavior, in that it provided his destination as well as his origin. The informant said the car left Bladensburg and proceeded east towards Belcrest or Toledo Terrace. The tip also "predicted" that the vehicle was going "to Bellcrest [sic], or Toledo Terrace." Thereafter, the police encountered a burgundy Honda, traveling east towards Belcrest or Toledo Terrace, with three occupants, which stopped in the vicinity mentioned in the tip.

Although the tip contained *some* predictive information concerning the vehicle's route and destination, we see the information regarding the route of the vehicle as unremarkable, especially considering that East–West Highway is a major artery that carries many vehicles. In essence, the information as to the vehicle's route provided little more concerning appellant's future conduct than what could have been forecast by an ordinary bystander who was present at the time and saw the vehicle on East–West Highway. Nor was the information as to the vehicle's destination particularly precise. Additionally, we note that the police intercepted the vehicle during its journey, and thus never verified the information as to the origin of its travels. Moreover, even when the vehicle was

stopped, there was very little in the way of descriptive information about the vehicle or its occupants that the police could confirm.

In sum, this tip contained neither sufficient quality nor quantity of information. Any bystander along East–West Highway could have observed that a burgundy Honda with three occupants was traveling east at the time in question. A reasonably precise destination was not provided by the informant, and the fact that the vehicle actually proceeded to the general area mentioned in the tip, standing alone, does not amount to a justification for the stop. *See White,* 496 U.S. at 330, 110 S.Ct. at 2416. Accordingly, we conclude that the information received from the anonymous informant lacked sufficient indicia of reliability to justify the stop of the vehicle. Because we hold that the police lacked a reasonable, articulable suspicion to stop the vehicle, it follows that the trial court erred in denying appellant's motion to suppress.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**