## JOHN E. BRANDAU *v.* SARAH E. (BRANDAU) WEBSTER

[No. 738, September Term, 1977.]

*Decided March 10, 1978.*

The cause was argued before DAVIDSON, MELVIN and LISS, JJ.

*Joseph M. Ayd* and *John J. Bishop, Jr.,* for appellant.

*William F. Mosner* for appellee.

LISS, J., delivered the opinion of the Court.

This controversy involves a dispute between a father and mother over the award of custody of a fifteen and a half year old daughter to the mother. John E. Brandau, appellant, and Sarah Brandau (now Webster), appellee, were married in May of 1960, and five children, Erin, Elizabeth, John, Jr., Micheau and Erika, were born as a result of the marriage. Marital difficulties arose between the Brandaus, and the appellee left her husband and children and began to live with a man named Webster, whom she subsequently married. The wife filed a suit in the Circuit Court for Baltimore County in which she sought custody of the children. The husband filed an answer in which he raised the issue of the mother's fitness as a custodian of the parties' minor children. The case came on for hearing before the Chancellor, and on the 29th day of March 1976, the Chancellor signed an order granting custody of the three younger children, John, Jr., Micheau and Erika, to the father and awarding custody of the two older children, Erin and Elizabeth, to the Department of Social Services. The order also provided that the Department was authorized to continue the two older girls in foster care subject to the further order of the court.

In November of 1976, the appellee divorced her husband in Texas, and shortly thereafter, married her paramour. On April 1, 1977, the wife filed a petition in the Circuit Court for Baltimore County in which she requested the court to modify the outstanding custody decree and to award the custody of Erin and Elizabeth, who were then still in foster care, to her.

The Chancellor conducted a hearing in open court and the appellee produced a number of witnesses to support her position that the best interests of Erin and Elizabeth, now sixteen and a half and fifteen and a half years old, respectively, would be served by awarding custody to the appellee. Testimony at the hearing indicated that J. B. Webster, her husband, was a chemical engineer who, at the

time of the hearing, had been employed by the Union Carbide Company for more than nineteen years. It was also stated that the appellee and her husband resided in a modern apartment complex in Jacksonville, Florida which was near excellent high schools for Elizabeth and Erin. In addition, there were excellent recreational facilities available, and a number of young people in the general age bracket of the young ladies lived in the vicinity. Both the appellee and her husband expressed an eagerness to have the girls reside with them and testified that from every standpoint they were prepared to offer them a suitable environment. The girls had previously visited the Websters in their home and each had enjoyed her visit.

Elizabeth and Erin were interviewed in the Chancellor's chambers individually, and a record was made of these interviews. The record indicates that Elizabeth told the Chancellor that she desired to live with her mother and stepfather in Florida. She expressed her feeling that she was closer to her mother than she was to her father and that she and her mother could more easily confide in each other. She characterized her stepfather as being a "great" person.

Erin, in her conversation with the Chancellor, also expressed a high opinion of Mr. Webster, but indicated she would prefer to remain in Maryland and complete her senior year in high school before moving to Florida to live with her mother. A social worker from the Department of Social Services, who was the supervisor for Erin and Elizabeth, testified that in her opinion it would be beneficial for the girls to live with their mother.

Appellant did not testify nor did he present any witnesses to contradict the testimony of the appellee's witnesses concerning the adequacy of the home to be furnished Erin and Elizabeth. He proffered to the Chancellor a series of typewritten exhibits prepared by counsel which purported to contain what would be the testimony of several witnesses if they were called to testify. All of the exhibits concerned a series of abuses which were supposedly perpetrated on Erika by her mother and stepfather on the occasion of Erika's visit

to their home. At that time, Erika was approximately four years old.

Defendant's Exhibit #1 was headed, "Remarks of Erika Wesley Bond Brandau Concerning Actions of Sarah E. Brandau and Jerome B. Webster as Related to John E. Brandau." The alleged remarks detailing the abuses of Erika encompassed a series of statements made by Erika to her father in the period from September 3, 1976 to January 8, 1977.

Defendant's Exhibit #2 was headed, "Remarks of Erika Wesley Bond Brandau Concerning Actions of Sarah B. Brandau and Jerome B. Webster As Related to Irene Brandau." (Irene Brandau is Erika's paternal grandmother.) These remarks reportedly began on July 9, 1976 and continued for a number of days thereafter.

Defendant's Exhibit #3 purported to be a psychiatric report on the Brandau family as prepared by a Dr. Russell W. Reid.

Defendant's Exhibit #4 was a report of Eileen Higham, Certified Psychologist, of an examination and consultation with Erika.

Objection was made to the admission of each of the exhibits and the objection was sustained. Appellant raises no issue on appeal that the proffers should have been accepted.

Appellant then proffered a prepared statement as to what Erika would testify to if she were called as a witness. Objection to the proffer was sustained. Appellant then sought to call Erika, who was then five years and ten months of age, to the witness stand for the purpose of determining her competence as a witness. Appellant submitted a series of 40 voir dire questions to the Chancellor which would have tested the child's general knowledge, her recollection of specific facts pertinent to the case, her comprehension of the difference between right and wrong, and her recognition of punishment for false swearing. The Chancellor refused to permit the child to be called to the stand for the purpose of inquiry into her competence as a witness. The Chancellor maintained that because of her age, as a matter of law, she could not qualify as a witness.

He stated,

> "I have never talked with Erika, but I have seen her and in my judgment, she is not competent to testify. . . .
>
> "The court believes it is in the sound discretion to exclude the testimony of a child of under six years of age on the basis that such testimony is essentially unreliable. The court has never talked with the child directly, but the court has observed the child and seen the type of child she is, and I believe I have the discretion to exclude her testimony without going further."

Appellee then rested her case and the Chancellor awarded custody of Elizabeth to the appellee and in accordance with Erin's express wishes permitted Erin to remain in Maryland in continued foster care. An order encompassing the conclusion of the Chancellor was then submitted and signed, and it is from that order that this appeal is filed.

The sole question to be decided by us is whether the Chancellor erred in refusing to conduct or to allow a voir dire examination of Erika in order to determine her competency to testify as a witness in this case.

It is conceded by the appellee that assuming, *arguendo,* Erika was a competent witness, and assuming that she had in fact testified concerning the alleged abuses to which she had been subjected by her mother and stepfather, then this testimony would have been relevant and pertinent to the Chancellor's consideration of whether to grant custody of her fifteen and a half year old sister to the appellee.

It is conceded, on the other hand, by the appellant that in the absence of such competent evidence that the Chancellor had before him more than sufficient evidence to justify his award of the custody of Elizabeth to her mother, and that we would have no right under the principles enumerated in *Davis v. Davis,* 280 Md. 119, 372 A. 2d 231 (1977) and *Ross v. Hoffman,* 280 Md. 172, 372 A. 2d 582 (1977) to substitute our judgment for that of the Chancellor. It is clear, then, that the decision required to be made by the Chancellor regarding the

determination of the competency of Erika to testify was material to the ultimate outcome of the case.

The capacity of children of tender years to testify is a matter ordinarily within the sound discretion of the trial court. *Horsey v. State,* 225 Md. 80, 169 A. 2d 457 (1961); *Saldiveri v. State,* 217 Md. 412, 143 A. 2d 70 (1958); *Reckard v. State,* 2 Md. App. 312, 234 A. 2d 630 (1967).

The discretion to be exercised by the trial judge must, of course, be exercised by the application of recognized legal principles. *Davis v. Corbin,* 28 Md. App. 364, 346 A. 2d 488 (1975).

There is no rule which excludes an insane person as such or a child of any specified age from testifying, but in each case the traditional test is whether the witness has intelligence enough to make it worthwhile to hear him at all and whether he feels a duty to tell the truth. McCormick on Evidence Sec. 62 (2d ed. 1972).

As there is no precise age which determines the question of competency, the court must resort to a determination of the capacity and intelligence of the child and its appreciation of the difference between truth and falsehood. The competency of a witness is established when it is determined that the witness has sufficient understanding to comprehend the obligation of an oath and to be capable of giving a correct account of the matters which he has seen or heard relevant to the question at issue. *Weeks v. State,* 126 Md. 223, 94 A. 774 (1915); *Davis v. Corbin, supra.*

The trial court is required to make judicial inquiry in determining the competency of a child of tender years and the criteria to be utilized in reaching a conclusion have been stated in Volume 81, Am. Jur.2d, *Witnesses,* Section 92, as follows:

> "In conducting the examination, the Judge must investigate the child's capacity to communicate, including an ability to understand questions and to frame and express intelligent answers, the child's capacity to observe and remember the matter about which testimony is sought, and the child's

consciousness of the duty to speak the truth. It has been held that it is the duty of the Court to conduct the child's examination; that the child's appearance, fear or composure, general demeanor and manner of answering and any indication of coaching or instruction as to answers to be given are as significant as the words used in answering during the examination, to determine competency, and it is impossible to make such important and necessary observations unless the child appears personally before the court.

"It is error to arbitrarily exclude the child as a witness without such examination."

In *Artesani v. Gritton,* 252 N. C. 463, 113 S.E.2d 895, 897 (1960), a child four years and eight months of age was injured when struck by an automobile. At the time of trial, the child was seven years and three months old. The trial court stated that it was "of opinion that by reason of age the witness is incompetent to testify as to matters concerning the alleged collision, and in its discretion sustains the objection of the defendants to the proposed testimony of the witness." The Supreme Court of North Carolina reversed on the ground that "the test of competency is not age but capacity to understand and relate under the obligation of an oath a fact or facts which will assist the jury in determining the truth with respect to the ultimate facts which it will be called upon to decide." (Citations omitted).

In *Litzkuhn v. Clark,* 85 Ariz. 355, 339 P. 2d 389 (1959), it was held that failure to resort to a voir dire examination in determining the competency of a six year old child amounted to an abuse of discretion.

We conclude that it was error for the Chancellor to refuse to conduct the examination of the proposed witness, Erika, either in court or in chambers in order to determine whether she was, in fact, a competent witness. It is true that the decision as to the competency of a witness is within the sound discretion of the trial court but the court must at least conduct such an examination as will disclose the factual basis on

which his conclusion as to competency rests. We shall not disturb the award of custody of Elizabeth to her mother at this point in the proceedings, but shall remand this case for further proceedings. We assume that Erika will be produced by the appellant for examination and that the Chancellor will then exercise his discretion as to whether to permit the witness to testify.

> *Case remanded for further proceedings without affirmance or reversal; costs to be paid by appellee.*