510 A.2d 1091

**Marion William JONES, Sr.**

v.

**STATE of Maryland.**

**No. 1097, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 7, 1986.

Arthur A. DeLano, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Starke M. Evans, State's

Atty. for Caroline County and Karen Kaludis, Asst. State's Atty. for Caroline County, on brief, Denton), for appellee.

Argued before BISHOP, GARRITY and ADKINS, JJ.

GARRITY, Judge.

We are asked to decide whether the lower court properly determined that a five-year-old child was competent to testify in the trial of a man accused of sexually assaulting her.

### Facts

On December 8, 1984, Marion William Jones, Sr., the appellant, agreed to use his pickup truck to help move Elizabeth E.'s furniture from Ridgely, Maryland, to her new home in Denton, Maryland. She is the mother of two daughters: Susan, who was four years old at the time, and Jessica, a younger child. Both children rode back to Ridgely with the appellant in his truck. Elizabeth E. and another lady drove to Ridgely approximately twenty minutes later.

The appellant and both of the girls were waiting in the truck when Elizabeth E. and her friend arrived. As Elizabeth E. entered the house, Susan got out of the truck, crying. Once in the house, Susan told her mother that the appellant had pulled down her zipper and "stuck his finger down my Susie." Elizabeth E. confronted the appellant, who denied any wrongdoing. Mrs. E. then called the police.

The appellant was charged with third degree sexual offense, child abuse, and assault and battery. He was tried by a jury in the Circuit Court for Caroline County and convicted of third degree sexual offense and child abuse. The appellant was sentenced to imprisonment for five years with all but one year suspended and five years supervised probation.

### Voir Dire Examination of Witness

The trial judge examined Susan as follows:

Q.   But do you think when we ask you questions you can tell us not the make believe answers, but the real answers?

A.   (Witness nodding head yes.)

Q.   Do you—have you heard the terms of telling the truth before.  Do you know what that means?

A.   (Witness shaking head no.)

Q.   You are not sure what "telling the truth" means?

A.   (Witness shaking head no.)

Q.   Do you—what happens if you—if you tell somebody something that is wrong?  Some make believe or pretend answer?

A.   Make believe.

Q.   Yes.  Suppose you made believe that her name was "Jeannie," for instance?

A.   Make believe.

Q.   That would be make believe.

A.   (Witness nodding head yes.)

Q.   Is it wrong to make believe?

A.   (Witness shaking head no.)

Q.   Do you understand what I mean when I ask you that?

A.   (No audible response.)

Q.   If you were playing at home with your friends and you wanted to pretend with a doll house or something, that would be all right to play make believe then, wouldn't it?

A.   (Witness nodding head yes.)

Q.   But would it be all right to play make believe here?

A.   (Witness shaking head no.)

Q.   Have you had other people—big people talk to you and ask you questions like this?

A.   (Witness shaking head yes.)

Q.   Will you be able to a—tell us the same answers that you told them?

A.   (Witness shaking head no.)

Q. If you remember them—is that what—why you are not sure?

A. (No audible response.)

MISS KALUDIS: I think she is a little confused.

THE COURT: Well, it has been a long time since I was a father. (Laughing throughout the courtroom.)

MISS KALUDIS: Your Honor, a—

THE COURT: Let me read something to you—

Q. Do you think that you could promise a—to tell us what you remember about certain things? In other words, if I asked you what you had for dinner last night and you could remember, would you tell me?

A. (No audible response.)

Q. If I asked you about some things that happened around your birthday last year and you remembered them, would you tell me what happened?

A. (Witness nodding head yes.)

Q. All right. Then you are promising that what you are going to tell us is the truth? Is that right?

A. (Witness nodding head yes.)

The appellant contends that the trial judge's determination that the witness was competent to testify is not supported by the record. Jones argues that the child was unable to appreciate the difference between truth and falsehood and, therefore, should not have been permitted to testify.

### Discussion of Law

Because the trial judge has the opportunity to observe the potential witness's conduct and demeanor during *voir dire,* the determination of whether a child is competent to testify is left to the sound discretion of the trial court. Absent an abuse of that discretion, the court's judgment will not be disturbed. *Horsey v. State,* 225 Md. 80, 169 A.2d 457 (1961); *Saldiveri v. State,* 217 Md. 412, 143 A.2d 70 (1958); *Brandau v. Webster,* 39 Md.App. 99, 382 A.2d 1103 (1978); *Williams v. State,* 11 Md.App. 350, 353, 274

A.2d 403 (1971); *Reckard v. State,* 2 Md.App. 312, 234 A.2d 630 (1967). As Judge Liss of this court explained in *Brandau:*

> As there is no precise age which determines the question of competency, the court must resort to a determination of the capacity and intelligence of the child and its appreciation of the difference between truth and falsehood. The competency of a witness is established when it is determined that the witness has sufficient understanding to comprehend the obligation of an oath and to be capable of giving a correct account of the matters which he has seen or heard relevant to the question at issue. *Weeks v. State,* 126 Md. 223, 94 A. 774 (1915); *Davis v. Corbin,* 28 Md.App. 364 [346 A.2d 488] (1975).

> The trial court is required to make judicial inquiry in determining the competency of a child of tender years and the criteria to be utilized in reaching a conclusion have been stated in Volume 81, Am.Jur.2d, *Witnesses,* Section 92, as follows:

>> "In conducting the examination, the judge must investigate the child's capacity to communicate (including an ability to understand questions and to frame and express intelligent answers), the child's capacity to observe and remember the matter about which testimony is sought, and the child's consciousness of the duty to speak the truth. It has been held that it is the duty of the court to conduct the child's examination; that the child's appearance, fear or composure, general demeanor and manner of answering, and any indication of coaching or instruction as to answers to be given are as significant as the words used in answering during the examination to determine competency, and it is impossible to make such important and necessary observations unless the child appears personally before the court."

In essence, the test of a child's competency is not age but the reasonable capacity to observe, understand, recall, and relate happenings while conscious of a duty to speak

the truth. *Accord, State v. Noble,* 342 So.2d 170 (La.1977); *Artesani v. Gritton,* 252 N.C. 463, 113 S.E.2d 895 (1960).

In *Noble,* the competency of a five-year-old girl, who was the victim of a rape committed by her mother's paramour, was challenged. In affirming the trial court's ruling that the victim was competent to testify despite her tender age, the Supreme Court of Louisiana determined:

> The trial court examined the child in full compliance with the statutory requirement (that such child has sufficient understanding to be a witness). Tyra stated clearly that she believed in God and knew that she should always tell the truth. Furthermore, her responses to the trial judge's questions concerning her name and address, the school where she attended kindergarten, her mother's absence at the time of the rape, and the events just prior thereto, all demonstrated understanding and intelligence.

In the case sub judice, we acknowledge the difficulty in fashioning questions to a child of tender age regarding the ability to understand and the need to tell the truth.[1] The determination of a witness's competency to testify, however, is mandated by fundamental fairness. Without the reasonable assurance of such testimonial capacity, the trial itself would be meaningless.

■ We believe that the *voir dire* examination in the case *sub judice* demonstrated Susan's total inability to understand basic questions. Her answers exhibited confusion and were riddled with inconsistencies. Young Susan displayed an inability to communicate in any meaningful manner. She failed to exhibit an understanding or an appreciation of her obligation to tell the truth or, indeed, its very

---

1. We suggest that in testing the competency of a child as a witness questions should be simple, direct, and within the grasp of the child's mind. Questions answerable by simple affirmatives and negatives may be asked. Indeed, in some instances this is the only way in which certain qualifying information can be elicited. Often questions that might appear to be simple and direct to an examiner may not be so to a child. *See* 35 Am.Jur.Proof of Facts 2d 665 for an excellent suggested list of questions in accordance with age and nature of trial.

meaning.  We are unable to conclude, on the basis of the record before us, that Susan was competent to testify. Thus, we reverse the decision of the trial court.

JUDGMENT REVERSED.  CASE REMANDED FOR NEW TRIAL; COSTS TO BE PAID BY CAROLINE COUNTY.