848 A.2d 631

**Kenneth D. PERRY**

v.

**STATE of Maryland.**

No. 86, Sept. Term, 2003.

Court of Appeals of Maryland.

May 7, 2004.

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Edward J. Kelley, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, Judge.

On May 4, 2001, Kenneth D. Perry was convicted of first and second degree murder and related charges by a jury in the Circuit Court for Baltimore City. On November 19, 2001, the court sentenced Perry to life without parole for first degree murder, thirty years consecutive for second degree murder, and twenty years consecutive for one of the handgun violations. The other counts were merged. In an unreported opinion dated August 6, 2003, the Court of Special Appeals affirmed the judgment. On December 11, 2003, this Court granted *certiorari* on the single issue of whether the trial court was required to hold a separate *voir dire* hearing, outside the presence of the jury, to determine if a seven-year-old child is competent to testify. *Perry v. State,* 378 Md. 613, 837 A.2d 925 (2003).

## *FACTS*

On July 11, 1998, the police discovered the bodies of La-Shawn Jordan and her friend Kelly Bunn in a Baltimore apartment. LaShawn Jordan sustained a single fatal gun shot to the top of her head. Kelly Bunn sustained five gunshot wounds. When police arrived, they found the front gate to the building and the front door of the apartment locked. They had to force their way into the apartment. When they entered, they found the two dead women and two small children, age four and age 18 months. The two children were crying. The four year old child (identified as Jewel) told the rescuers that she knew who had done this. She said, "Mommy's boyfriend did it" and "I know who did this. It was his father," and she pointed to her half-brother (the 18 month old). The police did not find the murder weapon. Furthermore, they did not find any DNA or fingerprint evidence linking Perry to the crime.

The case came to trial three years later, when Jewel was seven years old. The State called her as a witness. Prior to her testimony, defense counsel approached the bench and

asked the court to *voir dire* the child outside the presence of the jury. The exact argument is a follows:

Defense: Your Honor, I'm going to object to the qualifications of this young lady due to her age and her ability to understand the difference between truth and fiction and ask that the Court conduct *voir dire* outside the presence of the jury to determine whether she's qualified and competent as a witness.

State: Your Honor, absent [a] showing she is not competent I believe I am entitled to qualify her and in the presence of the jury.

Court: I don't think there's any special reason why I have to have a separate *voir dire* session with her. I mean the jury can evaluate her credibility. I don't think it's a two step process where I have to go first simply based on age. So I'm going to deny your request.

Defense: Well I'm requesting the Court an opportunity to *voir dire* this child outside the presence of the jury.

Court: Well I'm going to deny your request. You can cross-examine her.

At that point, the State began questioning Jewel. The first number of questions related to competency. The State asked Jewel her age, if she could read and write, if she went to school, and if she was a good student. After Jewel answered those questions in the affirmative, the State asked, "if you know the difference between telling the truth and telling a story?" When asked to explain the difference, the child said, "the difference is if you tell the truth—if you tell the truth it's good—it's good, but if you tell a story it's not good." She also testified that if you tell a story you get in trouble. She accurately answered questions about knowing where she was and why. She stated that she was in court, "For my mommy." She also knew her mother's name.

The State then asked the first substantive question. "Where [sic] you with your mommy when she died?" The defense did not object at that point and ask to *voir dire* the child further on the question of competency to testify. The child then testified about what happened the night her mother

was shot. Her account of the killings was detailed and understandable.[1] She also identified Perry as the shooter. She testified that she knew Perry because he was often in her house when she was there (when her mother was at work or at the store). She also testified that she did not know if Perry and her half-brother had a relationship and that she did not know who her half-brother's father was.[2] Jewel testified that she told her grandparents, her aunt, her sister, and the people who came to get her out of the apartment about what happened that night.

When defense counsel began his cross-examination of Jewel, he asked her additional questions about telling the truth and telling lies. Her answers demonstrated that she knew the difference between the truth and lies and that she knew "you get in trouble" if you tell lies.[3] When asked about her testimony that she had told her aunt and sister about the

---

1. I was in my room and my mommy was picking out my clothes and I was in my bed laying down and I was asleep and my brother was asleep too. So she was picking out my clothes for school I guess and—and I got up from the bed because I heard footsteps—footsteps coming. And—and then I heard footsteps coming and—and I was so afraid. So I told my mommy, I said, mommy I hear footsteps coming and somebody came in the door and they shot—and they shot my mommy and her friend named Kelly.
 And—and—and—but first my mommy's friend, she called me over to the closet and she said Jewel, Jewel, come here. And I said—and I went to her. And we was both in my closet in my room. And then first Frankie shot my mommy and then he shot her friend. And then I went out the room and he was gone. And I went in mommy's room to see if my brother was okay and he was standing on the bed and I went in there and we both—and we both sat down on the bed and we laid down.
 It should be noted that the police found Ms. Jordan's body on the floor of the middle room and Ms. Bunn's body in a "defensive position" in a closet in the same room.

2. The State argued to the jury that Perry was the boy's father, without objection from the defense.

3. Among the questions asked by defense counsel, the following colloquy ensued:
 Q. Have you ever seen or been told the story of Pinocchio?
 A. Yes.
 Q. What happened to Pinocchio when he lied? Do you know?

incident, she said she did not have a sister and that she had made a mistake when she said that earlier, but had not lied about it. She explained the difference between a mistake and a lie by saying that "if you make a mistake you're like you're saying something, but you messed up on that question." Defense counsel then proceeded to ask Jewel questions about the incident itself. She maintained her version of what happened on the day of the killings.

Both parties agree that it was Jewel's testimony alone which linked Perry to the two killings. Perry appealed and the Court of Special Appeals affirmed the convictions. In an unreported opinion, the Court discussed the child's competency:

Turning to the very brief aspect of the trial that dealt with Jewel's competency, it is clear that the questions put to her by the State, as a preamble to her substantive testimony, adequately addressed the factors that the court must evaluate in determining competency, namely: (1) ability to observe the facts in question; (2) ability to recall the relevant facts; (3) ability to communicate those facts; and (4) willingness to testify truthfully. As we review the precise questions put to Jewel, as noted, *supra*, we cannot imagine what more could have been asked of her, by either the court or opposing counsel.

The State's and appellant's examination mirrored what we would expect a trial court judge to ask in order to qualify a child witness as being competent. We see no significant distinction in whether the questions are asked by the court or by counsel, so long as the questions are sufficient to enable the court to make an informed ruling on the question

---

A. No.
Q. Do you remember his nose got bigger and bigger?
A. Yes.
Q. Have you ever told a lie before?
A. Yes.
Q. Did your nose get big?
A. No.
Q. What happened to you?
A. I got a beating.

of the child's competency. As we review the questions, and Jewel's responses, we likewise conclude from the record that she was a competent witness. Had the trial judge not been satisfied that the attorneys' questions adequately explored all of the competency factors, we think that he would have been required, in the exercise of his discretion, to supplement the inquiry with his own questions.

It is apparent from the record that the court was satisfied that competency had been established, and properly so. Merely because the questions were put to her by counsel, and not by the judge, does not result in an abuse of discretion.

## DISCUSSION

### Rules—Competency

Md. Rule 5–601 notes that "[e]xcept as otherwise provided by law, every person is competent to be a witness." This rule is derived from Fed.R.Evid. 601, and, like the federal rule, it "places the burden on the opponent of a witness to show that the witness is incompetent." Lynn McLain, *Maryland Rules of Evidence* 103 (2d ed.2002) (citing *United States v. Odom*, 736 F.2d 104, 112 (4th Cir.1984)). As stated by Professor McLain, under this rule, almost no one is *per se* incompetent to testify. Lynn McLain, *Maryland Rules of Evidence* 103 (2d ed.2002). It is left to the trial court in its discretion to determine "whether an individual witness has sufficient capacity to observe, recollect, and recount pertinent facts" and whether that individual "demonstrates an understanding of the duty to tell the truth." *Id.*

Md. Rule 5–104(a) requires the court to determine "[p]reliminary questions concerning the qualification of a person to be a witness. . . ." In addition, Md. Rule 5–104(c) states that "[h]earings on preliminary matters shall be conducted out of the hearing of the jury when required by rule or the interests of justice." We have been unable to locate a single Maryland case that discusses Md. Rule 5–104(c). We note, however, that Md. Rule 5–104(c) is derived from Fed.R.Evid. 104. Therefore, judicial interpretations of the federal rule are

persuasive. *See Beatty v. Trailmaster Products Inc.*, 330 Md. 726, 738 n. 8, 625 A.2d 1005, 1011 n. 8 (1993) (noting that "[b]ecause the Maryland summary judgment rule is derived from the federal rule, judicial interpretations of the federal rule are persuasive as to the meaning and proper application of the Maryland rule").

In *Odom*, defendants challenged the competency of some of the Government's witnesses (on the basis of mental incompetence) and argued that the trial court should have held an *in camera* hearing to determine their competency. *Odom*, 736 F.2d at 109 (1984). During the Government's case-in-chief, the defendants asked permission to *voir dire* approximately thirty witnesses outside the presence of the jury. *Id.* The trial court denied the motion. *Id.* The United States Court of Appeals for the Fourth Circuit found no abuse of discretion and noted that to grant the motion when made would have required the trial court to interrupt the trial and excuse the jury, causing an "interference with the orderly process of the case [that] was certainly not required or even prudent." *Odom*, 736 F.2d at 110.[4]

While it is clear that there is a vast difference between thirty witnesses (as in *Odom* ) and one witness (as in the case

---

4. The Court discussed the timing of the defendants' request to *voir dire* and noted that,

> [t]hey would excuse their delay in submitting such motion with the claim that they had not anticipated that the Government would present these residents of the Home as witnesses. We find this excuse difficult to accept. The heart of the Government's case was whether these residents had knowingly or intelligently voted absentee in the election. On this issue, it would seem inconceivable that the Government would not have subpoenaed the residents at trial.

*Odom*, 736 F.2d at 110. Similarly, in the case at bar, it is inconceivable that the defense would not have known before trial that the State would call Jewel to testify. Maryland Rule 4–252(d) states in pertinent part, "Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial." Because the State's case consisted primarily of Jewel's testimony, it appears that this issue was capable of being brought up before trial. The better practice would have been to bring this matter to the attention of the court prior to trial, if the defense believed there was a substantial question regarding her compe-

at bar), the Court's discussion of the rule is instructive. Discussing Fed.R.Evid. 104 and quoting the accompanying Advisory Committee's Notes, the Court said that " '[m]uch evidence on preliminary questions, though not relevant to jury issues, may be heard by the jury with no adverse effect . . . . [a] great deal must be left to the discretion of the judge who will act as the interests of justice require.' " *Odom*, 736 F.2d at 110. The Court also cited cases decided before the adoption of the Federal Rules of Evidence to support its conclusion that holding a hearing outside the presence of the jury to determine witness competency is not required. *Odom*, 736 F.2d at 111. Among other cases, the Court quoted *United States v. Gerry*, 515 F.2d 130 (2nd Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), in which the Court wrote:

> "The competency of a witness to testify before a jury is a threshold question of law which lies exclusively in the trial court's discretion. When competency is questioned there is no legal requirement that the trial judge conduct a formal hearing. There must be such an inquiry as will satisfy the Court that the witness is competent to testify but the form of that inquiry rests in the discretion of the trial court."

*Odom*, 736 F.2d at 111 (quoting *Gerry*, 515 F.2d at 137 (internal citations omitted)). The Court concluded its discussion of the question by stating, "[i]t is plain from these authorities as well as from the relevant Rules that a district judge has great latitude in the procedure he may follow in determining the competency of a witness to testify. Neither the authorities nor the Rules require an *in camera* hearing." *Odom*, 736 F.2d at 111.

---

tency. As noted in *Weeks v. State*, 126 Md. 223, 94 A. 774 (1915), the competency of a witness "is one to be determined by the court, and should be disposed of *as soon as it arises* and before the witness is allowed to testify to the facts in issue." 126 Md. at 228, 94 A. at 775–76 (emphasis added). If incompetency is not known when the witness is called, an objection should be made as soon as the incompetency becomes apparent. Otherwise the objection is waived. *Groshon v. Thomas*, 20 Md. 234, 242 (1863), *overruled in part on other grounds by Pat Perusse Realty Co. v. Lingo*, 249 Md. 33, 238 A.2d 100 (1968).

*Statutes, Case Law—Competency*

 The determination of a child's competence is within the sound discretion of the trial judge. *Horsey v. State,* 225 Md. 80, 82, 169 A.2d 457, 458 (1961); *Robert v. State,* 220 Md. 159, 165, 151 A.2d 737, 739 (1959); *Saldiveri v. State,* 217 Md. 412, 419, 143 A.2d 70, 74 (1958); *Freeny v. Freeny,* 80 Md. 406, 409, 31 A. 304, 305 (1895); *Matthews v. State,* 106 Md.App. 725, 740, 666 A.2d 912, 919 (1995), *cert. denied,* 341 Md. 648, 672 A.2d 623 (1996); *Jones v. State,* 68 Md.App. 162, 165, 510 A.2d 1091, 1093 (1986); *Reckard v. State,* 2 Md.App. 312, 318, 234 A.2d 630, 633 (1967), *cert. denied,* 248 Md. 734 (1968). Absent an abuse of discretion, that determination will not be disturbed on appeal. *Matthews,* 106 Md.App. at 740, 666 A.2d at 919. As noted by Professor Wigmore on the question of child competency,

> the trial court must be the one to determine finally, upon all the circumstances, whether the child has sufficient intelligence according to the foregoing requirements:
>
> > Brewer, J., in *Wheeler v. United States,* 159 U.S. 523, 524, 16 S.Ct. 93, 40 L.Ed. 244 (1895): The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence, as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous.

2 Wigmore, Evidence § 507 (Chadbourn rev.1979).

 The age of a child is not the test used to determine if a child is competent to testify. *Matthews,* 106 Md.App. at 741, 666 A.2d at 919. Rather, the test is "whether the witness has intelligence enough to make it worthwhile to hear him [or her] at all and whether he [or she] feels a duty to tell the truth." *Brandau v. Webster,* 39 Md.App. 99, 104, 382 A.2d 1103, 1106

(1978). The trial court must determine the child's "capacity to observe, understand, recall, and relate happenings while conscious of a duty to speak the truth." *Jones v. State,* 68 Md.App. 162, 166–67, 510 A.2d 1091, 1094 (1986).[5] Professor Wigmore states the essential requirements as: (1) capacity for observation; (2) capacity for recollection; (3) capacity for communication, including ability "to understand questions put and to frame and express intelligent answers;" and, (4) a sense of moral responsibility to tell the truth. 2 Wigmore, Evidence § 506 (Chadbourn rev.1979). Finally, as stated in Wharton's Criminal Evidence, the test of a child's competency is,

> intelligence; an understanding of the obligation to tell the truth; knowledge of the nature of an oath; ability at the time of the occurrence to accurately perceive it; ability to remember the occurrence; capacity to actively communicate the memories; and ability to understand and respond to simple questions about the occurrence. It is not necessary that the child be able to define an oath. The child need only understand that, upon taking an oath, the child has promised to tell the truth. A child's competency is not affected by the fact that the child makes contradictory statements on the witness stand.

2 Barbara E. Bergman, Nancy Hollander, Wharton's Criminal Evidence § 7:16 (15th ed.1998).

The types of questions usually asked to determine if a child is competent to testify are not related to the trial itself and include questions like "Where do you go to school?," "How old are you?," ... "Do you know what happens to anyone telling a lie?." Robin W. Morey, *The Competency Requirement for the*

---

5. Similarly, in a case involving the disqualification of a witness on the ground of mental incapacity, we stated:

> A witness should not be debarred from testifying, on the ground of mental incapacity, unless the proof of such disqualification is clear and conclusive. The test of incompetency is whether the witness has "sufficient understanding to appreciate the nature and obligation of an oath and sufficient capacity to observe and describe correctly the facts in regard to which [he or] she is called to testify."

*Johnston v. Frederick,* 140 Md. 272, 117 A. 768, 771 (1922) (citation omitted in original).

*Child Victim of Sexual Abuse: Must We Abandon It?*, 40 U. Miami L.Rev. 245, 263 (1985) (discussing *voir dire* of child witnesses) (footnote omitted). The questions asked should not be "complicated or tricky" and should include questions that ferret out if a child understands the concept of truth and falsehood. Morey, 40 U. Miami L.Rev. at 263 n. 78. For example, "Q. . . . If I were to say that I'm wearing a red jacket, would that be a lie or would that be the truth?, A. A lie[, and] Q. And why would it be a lie?, A. Because you're wearing a brown jacket." *Id.*

In *Brandau v. Webster*, 39 Md.App. 99, 382 A.2d 1103 (1978), the Court of Special Appeals held that the court erred by arbitrarily determining that a five year old child was incompetent to testify in a custody hearing solely because of her young age, without conducting an examination on the matter, either in court or in chambers. *Brandau*, 39 Md.App. at 105, 382 A.2d at 1106. The court described the criteria to be considered by the trial court and concluded by stating, "[i]t is true that the decision as to the competency of a witness is within the sound discretion of the trial court but the court must at least conduct such an examination as will disclose the factual basis on which his conclusion as to competency rests." *Brandau*, 39 Md.App. at 104–05, 382 A.2d at 1106. Because *Brandau* was a custody case, it did not address whether an inquiry into competency should be done outside the presence of a jury.

In *Matthews,* the trial judge conducted a *voir dire* examination of a four-year old child outside the presence of the jury and permitted both counsel to *voir dire* the child. *Matthews,* 106 Md.App. at 740–41, 666 A.2d at 919. The child's responses indicated that she knew the difference between the truth and a lie and the trial court determined that she was competent to testify. *Matthews,* 106 Md.App. at 741, 666 A.2d at 919–20. The Court of Special Appeals found no error in the court's procedure in that case and noted that, "[w]hen the issue is raised, the trial judge should conduct an examination out of the presence of the jury to develop the factual basis for a competency determination." *Matthews,* 106 Md.App. at 741,

666 A.2d at 919 (citing *Burgess v. State,* 89 Md.App. 522, 598 A.2d 830 (1991), in turn quoting *Evans v. State,* 304 Md. 487, 508, 499 A.2d 1261 (1985), *cert. denied.* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986), *motion for reconsideration denied,* 305 Md. 306, 503 A.2d 1326 (1986)).

In *Evans,* the Court of Appeals discussed the competency of a witness who had given many different accounts of an incident before trial, including accounts under oath, that were untrue. *Evans,* 304 Md. at 504, 499 A.2d at 1269–70. When the defense objected to the witness's testimony, the trial court elected to examine the witness, outside the presence of the jury, to determine if she knew the difference between a lie and the truth. *Evans,* 304 Md. at 505–06, 499 A.2d at 1270–71. The trial court also gave both counsel an opportunity to examine the witness on the question of competency. *Id.* The trial judge completed the inquiry by stating, "That is all I wanted to know, if she knows when she is telling the truth and she knows when [she is] not telling the truth. She is a competent witness." *Evans,* 304 Md. at 506, 499 A.2d at 1271. In affirming the trial judge's procedure and decision that the witness was competent, Judge Eldridge, for this Court, wrote:

When a substantial question is presented concerning the competency of a witness, the trial judge *should ordinarily conduct a voir dire examination of the witness out of the presence of the jury.* Although it is doubtful that any substantial question was presented concerning the competency of Sparrow to testify, as opposed to her willingness to lie when it suited her purposes, Judge Cathell charted a careful course and elected to *voir dire* the witness.

*Evans,* 304 Md. at 508, 499 A.2d at 1271–72. (Emphasis added.) While the issue in *Evans* is not precisely the same as the issue before us now, the above-quoted language is persuasive. The standard requires that if *a substantial question* regarding competency is raised, the court should ordinarily conduct a *voir dire* outside the presence of the jury.[6]

---

6. We think the better practice is to conduct *voir dire* outside the presence of the jury for two reasons. First, by doing so, the court

■ It is clear that merely pointing out that a witness is seven years old, does not, by itself, raise a substantial question about his or her competency to testify or trigger an automatic right to any opportunity to *voir dire* the child (let alone an opportunity to *voir dire* the child outside the presence of the jury). Section 9–103 of the Courts and Judicial Proceedings Article of the Maryland Code provides that "[i]n a criminal trial, the age of a child may not be the reason for precluding a child from testifying." Md.Code (1974, 2002 Repl.Vol.), § 9–103 of the Courts and Judicial Proceedings Article. *Brandau* states that it would be error to automatically *refuse to allow* a child to testify merely because of her age, without conducting an inquiry into her competency. *Brandau*, 39 Md.App. at 105, 382 A.2d at 1106. It does not follow, however, that the court, in the exercise of its discretion, *must* conduct such an inquiry before *allowing* a young child to testify in every case. Md. Code (1974, 2002 Repl.Vol.), § 9–103 of the Courts and Judicial Proceedings Article. Rather, the party objecting to the competency of the child witness must present a substantial question regarding competency to trigger the *voir dire* examination. *Evans*, 304 Md. at 508, 499 A.2d at 1271–72; Md. Rule 5–601 ("Except as otherwise provided by law, every person is competent to be a witness"); *Pegg v. Warford*, 7 Md. 582, 603 (1855) (stating that "[t]he legal presumption being in favor of the competency of every witness produced on the stand, no objection to the competency of such witness should be entertained, unless the party making it discloses at the time the ground upon which the objection is based. A mere general, indefinite objection will not avail."); Lynn McLain, *Maryland Rules of Evidence* 103 (2d ed.2002) (noting that the rule "places the burden on the opponent of a witness to show that the witness is incompetent").

---

lessens the risk of juror speculation or irrelevant or prejudicial information coming before the jury, particularly if the court decides ultimately to preclude the testimony because the child is not competent. Second, inasmuch as examination of a child witness poses unique challenges for attorneys, as a matter of trial advocacy, we think it fairer to the parties to permit full inquiry on the issue, without concern as to the impact upon the jury.

The evidence offered by the opponent to show a substantial question in *Evans* was "that Sparrow had given various inconsistent versions of the relevant facts, had lied under oath, was a prostitute and a user of drugs, had an unfortunate background, and indicated that she would lie when it suited her purposes." *Evans*, 304 Md. at 509, 499 A.2d at 1272. If it is doubtful that such allegations presented a substantial question regarding competency ("it is doubtful that any substantial question was presented concerning the competency of Sparrow to testify . . ." *Evans*, 304 Md. at 508, 499 A.2d at 1272), then it is at least equally doubtful that a bald assertion that a young child may lack the "ability to understand the difference between truth and fiction" presents a substantial question as to her competency.[7] While we did not otherwise define "substantial question" in *Evans*, we think it clear that the ordinary meaning of "substantial" should apply. Substantial means "consisting of or relating to substance . . . not imaginary or illusory . . . considerable in quantity." Merriam–Webster's Collegiate Dictionary 1170 (10th ed.2001). Baldly asserting, with no factual proffer to support the assertion, that a seven-

---

7. In the case at bar, the defense counsel stated,

> Your Honor, I'm going to object to the qualifications of this young lady due to her age and her ability to understand the difference between truth and fiction and ask that the court conduct *voir dire* outside the presence of the jury to determine whether she's qualified and competent as a witness.

As pointed out in oral argument, there is no evidence in the record that anyone had any reason to believe that Jewel lacked the ability to understand the difference between truth and fiction. For example, there is no evidence or proffer that Jewel suffered from learning disabilities, some kind of communication problem, a mental disability or disorder, or poor academic performance. There is also no evidence in the record that the defense was denied an opportunity to question Jewel, before the trial, to determine if there was any evidence of an inability to understand the difference between lying and telling the truth.

It appears quite clear that defense counsel's concern about Jewel's ability to understand the difference between truth and fiction was based solely on a false assumption that a child's young age *automatically* calls into question her ability to understand the difference between truth and lies. That kind of assumption in no way presents a "substantial question" regarding one's competency as a witness. *Evans*, 304 Md. at 508, 499 A.2d at 1271–72; *see Pegg v. Warford*, 7 Md. at 603.

year old child lacks the ability to understand the difference between truth and fiction, does not fit within that definition.

■ Perry argues that the court abused its discretion by refusing to hold a separate *voir dire* hearing, outside the presence of the jury, to inquire into the child's competency. Perry appears to be urging this Court to declare a new rule that conducting a separate *voir dire* is not only the better practice but also the required practice if the child witness is young and his or her inability to understand the difference between truth and fiction is alleged, regardless of whether there is any evidence or proffer offered to support that allegation. While it may be a more "careful course," there is no directive stated in *Evans* (or fixed by statute or other case law) that the trial judge *must* conduct the *voir dire* of the witness outside the presence of the jury. Because the determination of the competency of a child witness is within the sound discretion of the trial court, we see no reason to mandate such a procedure now.

■ The defendant also argues that the court abused its discretion by failing to make a determination with regard to Jewel's competency before she was allowed to testify. It appears clear to us, however, that, even though the judge did not conduct a *voir dire* outside the presence of the jury, the record reflects that the State conducted an examination of the child regarding competency. The court permitted the State to ask the competency questions and then, hearing no objection from the defense, did not interfere with the continued examination. It is clear that the court implicitly made a competency determination because the court allowed the child to remain on the stand and testify substantively about the murders.[8]

8. As noted previously, the competency of a witness "is one to be determined by the court, and should be disposed of as soon as it arises and before the witness is allowed to testify to the facts in issue." *Weeks v. State*, 126 Md. at 228, 94 A. at 775–76. If the judge had stopped after the competency questions to announce to the litigants (and the jury) that he found the child competent to testify, the defendant could have argued that such an announcement was prejudicial. The court is presumed to know the law. *State v. Chaney*, 375 Md. 168, 181, 825

We note that in *Reckard,* the defendant argued that the trial court erred by allowing the testimony of a child witness because she was not, in his opinion, a qualified witness. *Reckard,* 2 Md.App. at 317, 234 A.2d at 633. He argued that the court erred by not allowing him "the elementary right of questioning the capacity of that child on *voir dire." Id.* The record in that case indicated that the State's Attorney questioned the child about telling the truth and the consequences for not doing so. *Id.* When the State offered the witness as qualified, defense counsel objected and asked permission to question the witness. *Id.* The trial court refused to allow additional questioning, noting, "As I understand it, it's a *prima facie* case, it's in the discretion of the court. When you cross-examine you may ask questions which may reach to the weight that is given it. On the *voir dire* by the State's Attorney it appears sufficient to justify the Court in permitting the witness to testify." *Reckard,* 2 Md.App. at 317–18, 234 A.2d at 633.

The Court of Special Appeals found no abuse of discretion and noted that "the trial court found the witness to be qualified and competent based on her answers given in response to the questions of the State's Attorney. The capacity of children to testify 'is within the discretion of the trial court.'" *Reckard,* 2 Md.App. at 318, 234 A.2d at 633 (citations omitted). Similarly, in the case at bar, the trial court made a determination of competency after hearing the child's answers to the State's competency questions. If the court was satisfied with those answers that the child was competent to testify, it was within the court's discretion to determine that she was competent and to permit the State, thereafter, to ask

A.2d 452, 459 (2003); *Davis v. State,* 344 Md. 331, 339, 686 A.2d 1083, 1086 (1996) (noting that because "trial judges are presumed to know, and properly to have applied, the law," trial court's determination that a witness's pre-trial silence and his or her trial testimony are inconsistent, may be implicit). We have no reason to believe that the trial judge's comment (that he did not have to hold a hearing outside the presence of the jury) indicates a failure to understand his duty to determine the child's competency after the appropriate questions were asked.

substantive questions without further inquiry about competency.

As previously mentioned, defense counsel did not object and ask for an opportunity to *voir dire* the child once the State moved from competency questions to substantive questions.[9] Neither did the defense argue, after hearing the child's answers to the competency questions, that she was not competent and should not be permitted to testify. Furthermore, the defense made no argument that the child's substantive testimony showed that she was incompetent to testify. Perry makes no argument now that the child was shown to be incompetent. In fact, having read the testimony, it is abundantly clear that this child understood the difference between a lie and the truth, knew that she was required to tell the truth, and was able to report clearly what she witnessed.

■ In conclusion, we hold that the substantive determination of a child's competency is within the sound discretion of

---

9. We see no reason why the onus should have been on the trial judge to jump in and ask defense counsel if he would like to ask additional competency questions of the child. As stated by Judge Moylan in *Nelson v. State*, 137 Md.App. 402, 768 A.2d 738 (2001):

> It is not for trial judges, *sua sponte*, to second-guess trial tactics, however ill-advised they might seem to the judge. *Madison v. State*, 200 Md. 1, 8–9, 87 A.2d 593 (1952) ("We are ... without authority to review errors in trial tactics of defense counsel or to speculate as to possibilities that different tactics might have produced a different result."). Even the notion of "plain error" requires, as a rock-bottom minimum, a legal error by the judge, not a tactical miscalculation by defense counsel; the judge does not sit as co-counsel for the defense. Neither does the appellate court.

*Nelson*, 137 Md.App. at 424, n. 5, 768 A.2d at 750, n. 5. It is true that when the child was first called to testify, defense counsel asked for a separate *voir dire* hearing. That request was denied. Thereafter, once the *voir dire* hearing was being conducted in the presence of the jury, it was incumbent upon the defense to raise a timely objection if he wanted to inquire further as to the child's competency. Md. Rule 5–103(a)(1) ("Error may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling, and.... In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record ...."). Even then, it would have been within the trial judge's discretion to determine if he needed to hear more to make a decision on competency. *See Reckard*, 2 Md.App. at 318, 234 A.2d at 633.

the trial judge. Furthermore, we hold that the procedure that should be employed to determine a child's competency is, in the first instance, also within the trial court's discretion. *Odom,* 736 F.2d at 111; *Reckard,* 2 Md.App. at 318, 234 A.2d at 633; 2 Barbara E. Bergman, Nancy Hollander, Wharton's Criminal Evidence § 7:16 (15th ed.1998) (stating that "[t]he question of a child's competency as a witness may be determined either from a preliminary examination or from his testimony before the jury, or from both. Usually the child's competency is determined preliminarily by the court, and the method of conducting the examination is within the court's discretion.").

In addition, as a means of guidance for the trial courts, we hold that *if* a substantial question as to a child's competency is raised, ordinarily, the trial judge should conduct a *voir dire* hearing outside the presence of the jury. *See Evans,* 304 Md. at 508, 499 A.2d at 1271–72. The reduced risk of unfair prejudice and mistrial makes this the more "careful course." Finally, we hold that in a case where the objecting party states that a child is seven years old and baldly asserts that the child lacks the ability to understand the difference between truth and fiction, without more, a substantial question as to competency has not been raised.

JUDGMENT AFFIRMED, COSTS IN THIS COURT TO BE PAID BY PETITIONER.